# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

OCTOBER TERM, 1857.

~~~~~~~~~~~~~~

## SELIGMAN *et al. v.* KALKMAN *et al.*

Where a person, clearly insolvent, purchases goods from another on credit, and conceals the fact of his insolvency from the vendor, he is guilty of such fraud as vitiates the sale.

A party wishing to avoid such sale, on the ground of fraud, has no right to sue upon the contract at the same time. The latter suit may be pleaded in bar to the former.

APPEAL from the Superior Court of the City of San Francisco.

The facts of this case are sufficiently stated in the opinion of the Court, with the exception of the third instruction given to the jury, under the exception of plaintiff's counsel, which was as follows:

" The circumstance of Kalkman & Co.'s insolvency, even if they knew their situation at the time of the purchases, would not, of itself, show that the purchases were fraudulent; for a party doing a large business, although the balance is against him, may honestly believe he can, in the course of trade, overcome his embarrassment; and while revealing his pecuniary situation would certainly be ruinous, his silence in regard to it, may, possibly, be as consistent with honesty, as it is always with prudence. This fact of insolvency, therefore, without other facts and circumstances, tending to show an intention, at the time these goods were bought, not to pay for them, is not necessarily a fraud."

Judgment for defendants. Plaintiffs moved for a new trial, which being denied, they appealed.

*Williams, Shafter & Park,* for Appellants.

That wherever a merchant, or other person, insolvent, and knowing, or having every means of knowing himself to be so, purchases goods upon credit, without any reasonable expectation that he will be able to pay for them, he is guilty of such fraud against his vendor as invalidates the sale to him.

In the Earl of Bristol *v.* Wilsmore et al., 8 Eng. C. Law, 146, the Court say, " If the vendee (Miller) contracted for and obtained possession of the property (sheep) in question, with a preconceived design of not paying for them, that would be such a fraud as would vitiate the sale, and, according to the cases cited, would prevent the property from passing to him." 6 T. R., 565; 3 Camp., 352, 370 ; 2 Rus. on Crimes, 1392 ; 7 Taun., 59.

The only evidence of fraud in the principal case was, the vendee making payment by a check upon his bankers, with assurances that it " was as good as money," when his account had been overdrawn for some months, and having confessed a judgment on the day of purchase, to another upon execution issuing upon which the property was seized.

In Ferguson et al. *v.* Carrington, 17 E. C. L., 330, " Lord Tenterden, C. J., was of opinion, that if the defendant had obtained the goods, with a preconceived design of not paying for them, no property passed to him by the contract of sale." " The evidence of this intent was, that the goods had been bought upon *credit,* and that immediately after receiving the goods, the defendant sold them at reduced prices to other persons," and this evidence seems by the Court to have been considered sufficient.

Irving et als. *v.* Motley et al., 20 E. C. L., 233, Tindal, C. J., puts the principle fully, that an intention not to pay for goods purchased at the time of purchase, renders the sale fraudulent, and, in connection therewith, states what evidence is competent to establish such intention.

" Forced sales, at a considerable discount, to raise money for the wants and embarrassments of the vendees, and that such sales were such as 'none but persons in embarrassment would have consented to.' The existence of pressing embarrassments, and the bills they had to renew, it is not too much to say, they went to market with the certainty, or *great probability,* that the goods purchased (wools) would never be paid for. Evidence of other similar transactions is declared to be proper to show this *intent,* and the doctrine that the transaction must amount to the crime of procuring goods under false pretences is denied."

De Wolf *v.* Babbett et al., 4 Mason, 289, Story, J., it was held, that if delivery of goods sold was procured by a fraudulent suppression of the vendee's failure, " the delivery was altogether

without any legal validity, and that the vendor had a right to reclaim."

Lupin v. Mane, 2 Paige, 169, Chancellor Walworth holds, "If a merchant in good credit, knowing himself insolvent, and concealing that fact from his vendor, makes the purchase of goods, intending then never to pay for them, or for the purpose of placing them in the hands of an assignee for the benefit of other creditors, there can be no doubt it would be such a fraud as would vitiate the sale."

Fleming v. Slocum, 18 J. R., 403, the Court holds, that at law, a *suppressio veri*, in a fact material to the contract, invalidates a sale.

Fitzsimmons v. Joslin, 21 Vt. R., the Court go over the whole law upon this subject, and hold the whole race of vendees to the rule of common honor and honesty, and upon authority fully denying all distinction between *suggestio falsi* and *suppressio veri*, hold, that the pecuniary solvency of a vendee, is an essential element of the contract of sale, and that when "one is wholly and notoriously desperate in regard to pecuniary responsibility, it cannot be said he can be legally justified in suffering himself to pass for a man of substance, although he himself had been in no way instrumental in bringing about the delusion."

The third charge conflicts with the authorities above cited. It declares, if a vendee knows himself to be insolvent when he makes purchases, this does not authorize the jury to find the purchase fraudulent.

The jury are not told, that from these facts they would be authorized to find that the purchaser did not intend to pay, however hopeless his insolvency might be, for he might expect to retrieve his fortunes. Is not this hope of retrieving, and the circumstances upon which it is based, a matter within his peculiar knowledge, and for him to prove as an explanation, or rebutting of the plain and natural inferences resulting in supposing that he did not intend to pay, when he knew he could not pay.

Suppose the attachment suit was for the same property; then it is insisted, that such suit cannot affect the question of title to the property; that there can be no *implied* ratification of a fraud by the party injured. The beneficence of the law would be prompt in rejecting such a proposition. Remedial rules of law are always liberally construed; so, different remedial proceedings will be regarded only as cumulative in favor of the right. That which is most potent and persuasive will be allowed the fruits of success, and cannot be injuriously affected by any other unavailing attempt to reach the same result. If it were otherwise, then the greater the diligence the greater would be the danger. If there was fraud in the purchase, then there was no sale, and the plaintiff, suing as upon a sale, cannot make valid what was void.

Besides, the law, which is the representative of reason, will, in such case, assign, as the cause of the attachment suit, the ignorance of the plaintiffs as to the fraud, when that suit was commenced. This is urged, upon the hypothesis, that this Court will assume the two actions to be for the same cause.

*Sidney V. Smith* for Respondents.

Respondents fully admit that if a man purchases goods with the preconceived idea not to pay for them, it is a fraud upon the seller, and that the latter has a right to rescind the sale and retake his goods.

But this question of a preconceived idea, or in other words, of the intended fraud, is one solely for the jury. It is for them to say whether the facts, as proved in the case, tend to show that a fraud was committed or intended. It is not within the province of the Court to tell the jury, in so many words, as is claimed by appellants. "If you find that such and such facts are true, then the Court charges you that those facts constitute a fraud," because whether the facts constitute a fraud is the very question for the jury. In a case of legal fraud, such a charge might be correct, but it never can be so in the case where an actual fraud is claimed, and the sole ground upon which the appellants have sought to recover in the Court below, was that an actual, not a legal, fraud had been perpetrated on them.

Mere insolvency alone is no ground for rescinding a sale, not even if the purchaser "knew of it." He never is under the necessity of revealing the condition of his affairs to the seller. This was expressly decided in Mitchell *v.* Worden, 20 Barbour's S. C. R., 253. In that case, it was sought to rescind the sale on the ground that the purchaser had by fraud procured the delivery of the articles sold, such fraud being formed in the fact that the purchaser was insolvent when he purchased, and did not reveal the fact to the seller. The Court says : "Assuming the fact to be that McCabe was, at the time of the purchase of the brandy, insolvent; that his circumstances had become reduced during the period he was buying of the plaintiffs from time to time on credit; and meeting his engagements as to payments, and that he well knew his insolvency and intentionally concealed it from the plaintiffs, by simply withholding his knowledge on the subject without otherwise saying or doing anything to mislead, yet retained the possession of property, and was pursuing his business as theretofore; he was not, in my opinion, guilty of fraud, entitling the plaintiffs to avoid the sale. The law does not, in ordinary cases, impose upon a purchaser of property, the duty to disclose to the seller, at or before the sale, the state of his pecuniary circumstances, however desperate they may be, or be known by him to be." "The general principle, above stated, that the purchaser is under no obligation to disclose to

the seller his insolvency, although known to him, is, I think, equally applicable, notwithstanding there has been a long course of dealing between the parties, in the course of which credit has been given to the purchaser, and he has punctually performed his enagements, his insolvency having accrued during those dealings. No relation of trust or confidence is thereby created which should entitle the seller to expect of the purchaser, or require of him as a legal duty, to communicate to the seller information of his ability to pay all his debts, while he continues his business and the management of his affairs."

In Henshaw v. Bryant, 4 Scammon, 97, the Court, on page 108, declaring the law, as it is admitted by respondents, that intention not to pay for goods would avoid the sale, yet also states the law to be : "That while a man is really struggling against adversity, with an honest intent to retrieve his fortunes, the law will not declare him incapable of purchasing goods on a credit, although he does not disclose to his vendor the extent of his embarrassments. In such a case, there is wanting that essential ingredient in fraud, a design not to pay."

In Cross v. Peters, 1 Greenleaf's R., 376, the same doctrine was declared : "That the mere insolvency of the vendee, and the liability of the goods to immediate attachment by his creditors, though well known to himself and not revealed to the vendor, will not be sufficient to avoid the sale."

There is not, in the case at bar, any—the slightest—evidence that any fraud or misrepresentation was really practiced on appellants themselves ; and even admitting that Kalkman & Co. did commit frauds on others, subsequent to the purchase from appellants, the jury, by their verdict, have found that Kalkman & Co. never intended fraud against appellants, and, as a consequence from that, that when they bought the goods from appellants, that they did really intend to pay for them.

The question then arises, was there any error in the charge of the judge.

He told them distinctly that if they should believe that Kalkman & Co., bought the goods, intending never to pay for them, they should find for appellants. He left to them all the facts of the case ; told them that the evidence to prove the fraud need not be positive, that it might be inferred from circumstances, and while telling them that the acts of Kalkman & Co. towards other persons after the eleventh of March, one thousand eight hundred and fifty-six, tending to show fraud as against such persons should be received and considered with great caution, yet expressly told them, that if they could trace back those acts, and should believe that they tended to explain the intent with which Kalkman & Co., purchased the goods from Seligman, then such acts were applicable. That is, in other words, the Court told the jury that if they could find that A had robbed B, it did not ne-

cessarily follow therefrom that A had robbed C; in making up their minds, however, as to whether A had robbed C, they might take into consideration the fact that A had robbed B.

In reference to the authorities cited by appellants, respondents assert that they are not correctly stated.

The Earl of Bristol v. Willsmore was a motion for a new trial, which was granted on the ground that the preconceived design not to pay was one for a jury, whereas the Court at *nisi prius* had itself decided it.

In the next case cited by appellants, 6 Tenn. Reports, 565, the vendee obtained the goods by a check on his bankers, with assurances that it was good, whereas his account had been overdrawn for months. The case therefore is not a parallel one with this, as there was not only a false representation but a false token, and the goods were purchased on the faith of both.

The case of Ferguson v. Carrington, also cited by appellants, was *assumpsit* for the value of goods sold, not trover or replevin, so that while the remarks of Tenterden were law, they were not called for by the case at all.

Irving v. Motley, cited by appellants, is not correctly given by appellants. Tindal, C. J., does not point out what is sufficient evidence of intention not to pay, but merely states the evidence in that particular case, and then proceeds to say that whether under the facts developed, " the purchasers went to market with the certainty that the wools would never be paid for, was left to the jury," who had found the fraud, and the remarks of Tindal were on motion for a new trial.

Fitzsimmons v. Johnson, 21 Vermont, 129, is not at all in point. It was the case of a sale of goods to an irresponsible person on the fraudulent representations of a third person, which were known by purchaser, at the time, to be false. In trover, for the goods, it was held that the purchaser was bound by the fraudulent representations of the person recommending him. In other words, that he was a party to an express fraud, which avoided the sale.

That it made no difference whether the false representation was made by the purchaser himself, or by a third person, with his knowledge. The question, in either case, was, whether the goods were sold and delivered on the faith of the fraudulent representation.

BURNETT, J., delivered the opinion of the Court—TERRY, J., concurring.

The defendants Kalkman and Meyer were merchants doing business in San Francisco and Sacramento City, under the firm name of P. Kalkman & Co. They had been previously in the habit of purchasing goods on credit from the plaintiffs. Between the first of January and the twelfth of March, 1856, defendants

purchased several parcels of goods, on time, amounting in all to about the sum of eleven thousand dollars. On the fourteenth of April, 1856, the defendant Meyer commenced a suit against Kalkman for a dissolution of the partnership, upon the ground of gross misconduct on the part of Kalkman; and the defendant Bell was appointed by the Court, with the consent of the parties, as receiver. On the same day, plaintiff sued out an attachment against Kalkman & Co. Afterwards, certain facts coming to the knowledge of plaintiffs, which induced them to believe that defendants Kalkman & Co., had procured the goods under such circumstances of fraud as to avoid the contract, they brought this suit on the twenty-fifth of April, 1856, to recover the possession of the goods. At the trial of this action, the attachment suit had not been discontinued. A judgment was had in the Court below for the defendants in the replevin suit, and the plaintiffs appealed.

It is fully established by most of the cases, and conceded by the counsel of defendants, that where a purchase of goods is made with the preconceived design of not paying for them, it is such a fraud as will vitiate the sale. 8 Eng. C. L., 146; 17 Id., 59; 4 Mason's R., 289; 1 Hill, 302, 317; 2 Paige R., 169; 20 Barbour S. C. R., 253.

If the design exists to defraud the vendor at the time the purchase is made, no title passes to the purchaser. The only difficulty in reference to cases of this kind, is to lay down some rule as to what facts shall constitute conclusive evidence of such intention. The intention of a party, which is the internal and invisible resolution of the mind, can only be known to others by external acts. It requires evidence to establish the existence of this intention. In estimating the force and effect of certain facts as evidence of intention, a man must be presumed to intend that which is the natural and ordinary result of his own deliberate act. 1 Starkie, 30; Eng. C. L. R., 290; Hall v. Curzon.

In the case of Cross and others v. Peters, 1 Greenleaf's R., 343, it was held, that to render a sale of goods void, on account of the fraud of the purchaser, it must be shown that *description* and false *representations*, were fraudulently made by him to induce the vendor to part with the goods. In the opinion, nothing is expressly said about the effect of an intention not to pay for the goods, in a case where no deception and false representations are made. But, from the report of the case, the opinion seems to be too broad, and to be in conflict with the general current of English and American authorities. When the fraudulent intention exists at the time the purchase is made, there would seem to be no doubt as to the contract being void, as against the vendor, whether there was any misrepresentation or not

In one of the head notes to this case, it is stated, that " the mere insolvency of the vendee, and the liability of the goods to

Seligman *v.* Kalkman.

immediate attachment by his creditors, though well known to himself, and not revealed to the vendor, will not be sufficient to avoid the sale." It is true, this doctrine is found in the opinion of the Court, but it is also true, that it is *obiter dictum.* The question really before the Court, as stated in the opinion of the Chief Justice, was, whether, " if a man doing business as a trader, and in good credit, (though insolvent at the time, but not aware of the fact,) obtains goods on credit in the town where he lives and is known, without practicing any artifice, or making any false representations or pretences, or, in fact, any representations or pretences at all," he is guilty of fraud. The Court held, that he was not.

In the case of Mitchell et al. *v.* Worden, 20 Barbour S. C., 253, J. R. Strong, J., expressed the opinion that "though the purchaser was insolvent at the time of the purchase, and well knew his insolvency, and intentionally concealed it from the vendor, by simply withholding his knowledge on the subject, without otherwise saying or doing anything to mislead, yet retained the possession of property, and was pursuing his business as theretofore, he was not thereby guilty of fraud, entitling the vendor to avoid the sale." But it appears that this was mere *obiter ;* for the learned Judge says himself, " that it does not appear that the purchaser was then insolvent, or that he understood he was so, except as it may be inferred from the mere fact that he soon after made a general assignment for the benefit of his creditors, without any proof of the extent of his inability to pay his debts."

It was expressly decided in reference to the purchase of another portion of the property in dispute, that if the purchaser was not only insolvent, and knew the fact, but had performed an open and notorious act of insolvency, it was his duty, arising out of his previous dealing with the vendors, to disclose the fact before the sale, and that a violation of that duty amounted to a fraud.

The case of Fitzsimmons *v.* Jazlin, 21 Vir. R., 130, was very fully considered. The able opinion of the Court, delivered by Mr. Justice Redfield, is admirable for its high and elevated moral tone. In that opinion, the learned Judge says : " If one is *wholly and notoriously desperate* in regard to pecuniary responsibility, it would not be said that he would be *legally justified* in suffering himself to pass for a man of substance, although he himself had been in no way instrumental in bringing about the delusion, if such a case could be supposed, or likely soon, to occur."

In that case, the purchaser was not only silent as to his insolvency, but others had represented him as doing a thriving business, and as worthy of credit ; and the opinion of the Court, as I understand it, was predicated upon both grounds. The purchaser was held responsible for the concealment, on his part, and the positive misrepresentation, on the part of others.

In the case of Bruce v. Ruler, 17 Eng. C. L. R., 700, it was held that where A, at the request of B, his yearly tenant, accepted C as tenant instead, who proved to be insolvent, and it appeared that B, when he proposed C to A, knew that C had compounded with his creditors, but did not communicate that fact to A, the suppression of such fact was a fraud in B, which rendered him still liable to A for the rent." .

The distinction attempted to be taken between the case of a purchaser who had previously committed an open and notorious act of insolvency, and who had not performed such an act, but was in truth and in fact as insolvent as the former, does not seem to be well founded. These cases differ more in mere appearance, than in .point of reality. In the first case the insolvency of the purchaser is known to others, as well as to himself, while in the latter case it is known only to himself. But the vendor is in no better condition in one case than in the other, and the purchaser should be held to be as honest in the first case as in the second. The question with the vendor is, whether the purchaser is then actually solvent or insolvent. The facts being within the personal knowledge of the purchaser, in the one as in the other case, he ought to be held to make them known in both. The vendor has the right to know the real state of the case, and not the mere deceptive appearances.

It may be difficult to arrive at any conclusion reconcilable with all the authorities; but, from the nature of the case, this rule would seem to be the most just and reasonable, namely: that where a person, clearly insolvent, purchases goods from another, on credit, and conceals the fact of insolvency from the vendor, he is guilty of such fraud as vitiates the sale.

The insolvency ought to be clear, and not subject to any reasonable doubt. And the purchaser must be held to know the true state of his own business; and, if he does not, the consequences should not be visited upon the party who had not the means of knowing. Alvarez v. Brannan, Jan. T., 1857; Taaffe & McCahill v. Josephson et al., April T., 1857.

In the second instruction given by the Court to the jury, they were told, substantially, that fraud is not to be presumed; that the presumption of innocence must be overcome by proof; that this proof may be circumstantial, if "the circumstances, when taken together, resist any other conclusion, and point with moral certainty to a fraud."

This instruction is objected to by the learned counsel for plaintiffs, as laying down too severe a rule, as to the effect of testimony required in a *civil suit*. This objection would seem to be well founded. The correct rule is laid down by Greenleaf on Evidence, § 13 d. "In civil cases, it is sufficient if the evidence, on the whole, agrees with and supports the hypothesis which it

is adduced to prove; but, in criminal cases, it must exclude every other hypothesis but that of the guilt of the party."

The third instruction is erroneous, if the rule we have laid down be correct.

The fourth instruction is objected to, upon the ground that it charges the jury as to the weight they should give certain circumstances proved. The substance of the charge is that these circumstances should be received and considered with great caution," and that the Court was in doubt as to whether the testimony was admissible at all.

The seventeenth section of the sixth article of the Constitution provides, that " Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." The right to " state the testimony" would hardly authorize a Judge to express his opinion as to its *effect*. He might well state that it was admitted for a specified term *only*, and not as competent evidence with respect to other issues. " Questions respecting the competency and admissibility of evidence, are entirely distinct from those which respects its sufficiency or effect, the former being exclusively within the province of the Court—the latter belonging exclusively to the jury." 1 Greenleaf Ev., § 2. We think the objection to this instruction well taken.

The fifth instruction was that " this controversy, in its effects, is not between plaintiffs and Kalkman & Co., but between these plaintiffs and all other creditors of the defendants, affecting as it does the dividends to all the creditors."

This instruction, it would seem, was not required, but we are not prepared to say that the plaintiffs were injured by it. The charge contained nothing but the truth, and this was evident from the testimony that the jury would have known it without being informed by the Court. The charge might well have been omitted; but we think could produce no injury to plaintiffs.

In the seventh instruction, the Court charged the jury, among other things, that " if they believe, · from the evidence, that since the plaintiffs became acquainted with the facts they still adhere to the suit upon the contract, and intend to prosecute it to judgment for the same goods, then they have no right to this suit, and you will find for the defendants."

It is a very just general rule, that a defendant shall not be harassed with several suits for the same matter, at the same time. In such case, the pendency of one suit may be plead in abatement of the other.

In this case, the facts constituting evidence of the alleged fraud were unknown to the plaintiffs at the time the attachment suit was commenced, and when they afterwards became known, by information obtained from third persons, they brought this suit.

But when they discovered the fraud, the plaintiffs should have promptly made election and relied only upon one remedy. It often happens that a party has his election to pursue one of two or more remedies; but he should not pursue several at one and the same time. To allow the plaintiffs to do so in this case, would have given them a great advantage over other creditors. By keeping both suits pending at the same time, and for the same matter substantially, and by prosecuting this one to judgment first, and failing in it, then to fall back upon the attachment suit, the plaintiffs would have had two chances to one over other creditors. We think the instruction correct.

Under the view we have taken, it is not necessary to decide the question whether the Court below erred in rejecting testimony in regard to the commercial sense of the word "inventory." \

For the foregoing reasons, the judgment of the Court below is reversed, a new trial ordered, and the case remanded for further proceedings.