## Case No. 3,983.

### DONALDSON v. FARWELL et al.

[5 Biss. 451;[1] 6 Chi. Leg. News, 101.]

Circuit Court, E. D. Wisconsin. Oct., 1873.[2]

FRAUDULENT PURCHASE BY BANKRUPT — WHEN VENDOR MAY RECOVER GOODS FROM ASSIGNEE —TITLE IS DEFEASIBLE.

1. A purchase of goods on credit by an insolvent man, with the intention of using their proceeds to pay other creditors, and never meaning or expecting to pay for them, is fraudulent, and the vendor has the right to recover them, even as against the assignee in bankruptcy, if he can identify the goods, and exercises his right of reclamation within a reasonable time.

[See note at end of case.]

2. Such a sale does not pass to the purchaser an absolute title, but only one defeasible at the option of the vendor.

3. Though the assignee holds the bankrupt's estate under a stronger right in many cases than the bankrupt himself could, he does not so hold it as to divest the right of reclaiming goods thus obtained by fraud.

This was an action of trover by Nathaniel Donaldson, assignee of Emanuel Mann, bankrupt, against John V. Farwell and his partners, to recover the value of certain goods sold by them to the bankrupt and afterwards reclaimed by them.

The bankrupt was, during the early part of 1872, a merchant in Richfield, near Milwaukee, Wisconsin, and on the 4th, 5th, and 17th days of April, 1872, purchased through his son, Washington L. Mann, of the defendants, merchants in Chicago, a bill of goods amounting to $5,073.49. At the time of this sale, Mann, the bankrupt, was largely indebted and insolvent, and his son made these purchases, which were on the ordinary terms of credit, with the knowledge that his father intended to convert the goods into cash, and use the money in paying certain farmers to whom he was indebted, and that he had not the means and did not expect to be able to pay for the goods. The son ordered the goods shipped, not to Richfield, but to Milwaukee, giving as a reason that they could be hauled from there by teams.

On the 24th of May following, Mann filed his petition in bankruptcy in the district court for this district, and was duly adjudicated a bankrupt, and the plaintiff elected his assignee.

The defendants knew nothing of Mann's insolvency, nor of the bankruptcy proceedings, until the 5th of June, when they took immediate steps to recover the goods, on the ground of fraud in their purchase, and on the 7th of June retook $3,500 worth of them from the warehouse where they were stored, and before they had come to the possession of the assignee. The balance the assignee allowed Farwell then to remove, they giving bond satisfactory to the district court to pay the as-

signee the value of the whole in case they were defeated in the action.

The case was first tried in October, 1872.

Finches, Lynde & Miller, for plaintiff.

1. The 14th section of the bankrupt law [of 1867 (14 Stat. 522)] declares that the assignee shall be vested with the title which the bankrupt had at the commencement of the proceedings in bankruptcy.

2. Mann had the legal title to the goods at the date of the commencement of the proceedings in bankruptcy. He had such a title that he could have made a bona fide sale of all the goods purchased from Farwell, to a third party.

3. No attempt was made by Farwell & Co. to rescind the contract of sale until after the assignee was appointed. It was then too late for Farwell & Co. to reinvest themselves with the title. The title, by force of the bankrupt law, had become vested in the assignee before any step was taken by Farwell & Co. to rescind the contract.

4. An assignee in bankruptcy, by the provisions of the bankrupt law, takes an entirely different interest from an assignee under a voluntary assignment. In re Joslyn [Case No. 7,550]; Ex parte Finds [Id. 6,516].

Mariner, Smith & Ordway, for defendants.

1. The purchase of goods upon credit with intent not to pay for them is a fraud which renders the sale void at the election of the vendor, as against the vendee and all others having no better title than such vendee. It is true that the title vests in the vendee, but it is a voidable title. Load v. Green, 15 Mees. & W. 216; Ash v. Putnam, 1 Hill, 302; Cary v. Hotailing, Id. 311; Dow v. Sanborn, 3 Allen, 181; Nichols v. Michael, 23 N. Y. 264; Hennequin v. Naylor, 24 N. Y. 139; Seligman v. Kalkman, 8 Cal. 207; Bowen v. Schuler, 41 Ill. 192; Bidault v. Wales, 19 Mo. 36; Kerr, Fraud & M. 110; Conyers v. Ennis [Case No. 3,149].

2. In order to establish fraud in the purchase of goods, it is not necessary that the purchaser should have made false statements concerning his pecuniary ability, by which the credit was obtained. The fraud consists in the purchase with intent not to pay, and this intent may be proved by facts and circumstances as well as by the affirmative declarations of the purchaser. Johnson v. Monell, 41 N. Y. 655; Brown v. Montgomery, 20 N. Y. 287; Durell v. Haley, 1 Paige, 492; Seligman v. Kalkman, 8 Cal. 207; Bidault v. Wales, 19 Mo. 36; Bowen v. Schuler, 41 Ill. 192; Bullock v. Narrott, 49 Ill. 62; Byrd v. Hall, 41 N. Y. 646.

3. A fraudulent suppression of the fact of insolvency is alone sufficient to avoid the sale. Johnson v. Monell, 41 N. Y. 655; Durell v. Haley, 1 Paige, 492; Powell v. Bradlee, 9 Gill & J. 220; Hennequin v. Naylor, 24 N. Y. 139; Seligman v. Kalkman, 8 Cal. 207; Bidault v. Wales, 19 Mo. 36.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]
[2] [Affirmed in 93 U. S. 631.]

4. The fraudulent intent may be found from acts of the purchaser after the sale. Bowen v. Schuler, 41 Ill. 192, and cases above.

5. The vendor may disaffirm the sale for fraud within a reasonable time after discovery thereof, and what is a reasonable time will depend upon the circumstances of each case. As a general rule, as against the vendee, and all who have no better title, he may elect to rescind so long as he has done nothing to affirm the sale after knowledge of the fraud. An execution creditor, a common-law assignee, one holding as collateral security merely, has no better title than had the fraudulent vendee. As to this there is no dispute, but our sixth proposition is disputed, and thereupon arises the principal difficulty in this case.

6. We maintain that an assignee in bankruptcy is not a purchaser for value, that he stands like a common-law assignee, in the bankrupt's shoes, and that the defrauded vendor may rescind, even after the goods have come to the possession of the assignee in bankruptcy, as in this case part of the property had, and that the right to rescind is not cut off by the adjudication of bankruptcy and appointment of an assignee. We claim that under such circumstances the defrauded vendor can reclaim his goods whenever he can identify them, or any of them, in the possession of the assignee, and until they have gone to a bona fide holder for value, exactly the same as at common law, and as a necessary result of this that he can claim of the assignee the proceeds of such goods which he may have sold, until in the regular course of executing his trust he has paid over and distributed the same among the creditors of the bankrupt. Such is the law as to common-law assignees, and we see no difference in principle between the two cases.

The plaintiff's counsel combat this proposition vigorously, their main reason being the inconvenience which will be introduced by such a rule into the administering the effects of bankrupts.

Section 14 of the bankrupt act vests in the assignee "all the estate, real and personal, of the bankrupt * * * and all * * * right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend the same as the bankrupt might or could have had if no assignment had been made, * * * And he may sue for and recover the said estate, debts and effects * * * in the same manner and with like effect as they might have been prosecuted or defended by such bankrupt."

So far the assignee represents the bankrupt, but beyond this by the same section he is made to represent the creditors of the bankrupt, and is given greater rights than had the bankrupt. "All the property conveyed by the bankrupt in fraud of his creditors * * * shall in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee."

By this section just what the bankrupt had, no more, is vested in the assignee, by this we understand, all the property, rights, and equities of the bankrupt, which in law or equity belonged to his creditors—no more, no less, not the estate or property of others.

The bankrupt law of 1841 [5 Stat. 442] was not materially different from that of 1867, both substantially like the English bankrupt act of 6 Geo. IV. c. 16, § 63. Under both these statutes there are decisions which we submit fully and fairly rule this case.

The decisions in Massachusetts under their insolvent law are also the same. Pratt v. Wheeler, 6 Gray, 520. Under the bankrupt act of 1841 there are four cases giving the same construction for which we contend. Ex parte Newhall [Case No. 10,159]; Winsor v. McLellan [Id. 17,887]; Fletcher v. Morey [Id. 4,864]; Mitchell v. Winslow [Id. 9,673].

Under the English act cited, the case of Load v. Green, 15 Mees. & W. 215, is exactly in point. A bought goods from B, with the fraudulent intention of not paying for them, and kept them until his bankruptcy, when they were taken possession of by his assignees in bankruptcy. The defrauded vendors, after demand and refusal to deliver, brought trover against the assignees, and the action was sustained. The court says, "As the goods were obtained by a fraudulent purchase, the plaintiffs had a right to disaffirm it, to revest the property in them, and to recover its value in an action of trover against the bankrupt; and as the assignees take, by virtue of the assignment, such interest only as the bankrupt has, the plaintiffs had the right to recover the value of the goods in the hands of the assignees in the same form of action on a conversion by them, unless they were entitled to the goods under the 72nd section."

Tenneys, Flower & Abercrombie and E. A. Storrs, of counsel.

DRUMMOND, Circuit Judge, charged the jury as follows:

This is a case of a sale to an insolvent person, who was supposed by the vendor to be solvent, with the expectation and belief by the purchaser that the goods would never be paid for.

There were also some facts connected with the transaction which it is proper for the jury to consider, as perhaps adding evidence to what is claimed to be a fraud on the part of the vendee at the time of the sale, namely, that the bankrupt, residing at a little village some few miles from Milwaukee, where he had transacted business for several years, and where under ordinary circumstances, the goods would be sent, requested the goods to be shipped to Milwaukee, for the reason, as the witness (his son) stated, that they could

be hauled from Milwaukee to the bankrupt's place of business.

This, under the conceded facts of the case, may perhaps be assumed to be a false representation made by the witness.

The goods were shipped by the defendants as directed. They came into the possession of the bankrupt. Nothing had occurred to create any suspicion on the part of the defendants until the last of May or the first of June following, when, on the 5th of June, measures were taken to reclaim the goods, on the ground that the sale was fraudulent, and that the right existed on the part of the vendors, to make a reclamation. The goods, with the exception of about $100 worth, were accordingly reclaimed by the defendants and taken possession of by them.

Now, under the facts of the case, the question is whether the action is maintainable by the assignee.

The main ground upon which it is said the action could not be maintained, is that by the filing of the petition in bankruptcy and the appointment of an assignee, he became the representative of the creditors, and that it was not competent for the vendors, notwithstanding the fraud that had been committed, to reclaim the goods, because it would be interfering with the rights of the general creditors; that other parties might have sold goods to the bankrupt; that these goods might have been disposed of or the proceeds of them have been distributed in various ways to the creditors of the bankrupt or otherwise, and that therefore to allow a person to come in under such circumstances and to reclaim the goods because he could identify them, would be giving him an unjust advantage over other creditors who had sold goods under similar circumstances, who would not have the power, owing to what might have occurred after the sale, to reclaim the goods or their proceeds.

That is substantially the ground upon which the case is placed on the part of the plaintiff, and as constituting the reason why the rights of the defendants are not the same as they would have been if no petition in bankruptcy had been filed.

The assignee in bankruptcy undoubtedly takes and holds the property in many respects differently from the bankrupt. The assignee has a right, as to the property, to do many acts which the bankrupt himself would not have the right to do. And it is not therefore true, absolutely and without qualification, that an assignee takes property precisely as the bankrupt held it at the time the petition was filed. He takes it with stronger right, and as representing all the creditors of the bankrupt. And the question is whether, under the circumstances of this case, he takes it so as to divest the right which the vendors would undoubtedly have had, as against the vendee, to reclaim the property.

The sale made by the defendants passed the title in the property to the bankrupt, but it passed only a defeasible title. That is to say, it could be rendered inoperative at the instance of the vendors, J. V. Farwell & Co. It was competent for the vendors to allow the bankrupt to retain possession of the property, and if before reclamation the bankrupt had parted with the property to a person who purchased it in good faith for value, that destroyed the right of reclamation by the vendors. So that it was a transfer of the title which might become absolute only at the option of the vendors. If the bankrupt retained the property at the time of the filing of the petition in bankruptcy, the title passed to the assignee in bankruptcy, and as we think the weight of authority is, it passed not as an absolute, but as a defeasible title, with the right still on the part of the vendors to reclaim the property, provided that it was done within a reasonable time after the sale and after knowledge of the fraud which had been perpetrated. Therefore, if you believe the facts stated by the witnesses, and if you believe that within a reasonable time after knowledge of the facts, the vendors reclaimed the goods, or took effectual measures for their reclamation, then we think that the action can not be maintained against the defendants.

It is, as I have said, substantially a question of law. We know there are many considerations which lead to an opposite conclusion. But looking at the case in all its aspects, and in view of the great weight of authority upon the subject, we feel inclined to give you this instruction, knowing that it is competent for the plaintiff, if he shall think that the view of the court is erroneous, to have it reviewed by the supreme court of the United States.

The jury found a verdict for defendants.

NOTE. For an elaborate discussion of the rights of the creditor, where the purchaser, at the time of the purchase, had no intention of paying for them, consult Stewart v. Emerson [52 N. H. 301], and numerous authorities there cited. The supreme court of Illinois has just decided that where goods have been obtained by fraudulent representations, they can be reclaimed at the option of the vendor, unless they have passed into the hands of an innocent purchaser, without notice, and that an attaching creditor is not such a purchaser, but takes them subject to all equities. Schweizer v. Tracy [76 Ill. 345].

[NOTE. On plaintiff's appeal the judgment entered in this case was affirmed by the supreme court. Donaldson v. Farwell, 93 U. S. 631. Mr. Justice Davis, delivering the opinion of the court, said: "The doctrine is now established by a preponderance of authority, that a party not intending to pay, who, as in this instance, induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent not to pay for them, is guilty of a fraud which entitles the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract and recover the goods. Byrd v. Hall, *41 N. Y. 647; Johnson v. Monell, Id. 655; Noble v. Adams, 7 Taunt. 59; Kilby v. Wilson, Ryan & M. 178; Earl of Bristol v. Wilsmore, 1 Barn. & C. 514; Stewart v. Emerson, 52 N. H. 301; Benj. Sales, § 440, note of

DONALDSON (Case No. 3,984) [7 Fed. Cas. page 886]

the American editor. Here the defrauded vendors exercised the right of rescission shortly after the sale, and as soon as they obtained knowledge of the fraud. If, therefore, this controversy were between Mann and them, it is clear that he would not be entitled to recover. The assignee has no right of action. It is true that the assignment relates back to the commencement of the proceedings in bankruptcy, and vests, by operation of law, in him with certain specified exceptions, the property of the bankrupt, although the same is then attached and dissolves any attachment made within four months next preceding the commencement of the bankruptcy proceedings. But, if there be no such liens, and the property has not been conveyed in fraud of creditors, the assignee has no higher interest in or better title to it than the bankrupt. Only the defeasible title of the latter to the goods in controversy vested in the assignee, and we think that the exception to the charge of the court is not well taken."]