GOODMAN ET AL. *v.* SAMPLINER ET AL.

[No. 3,144.   Filed October 12, 1899.]

REPLEVIN.—*Complaint.—Ownership of Property.*—A complaint in an action in replevin which alleges that plaintiff is the owner and entitled to the immediate possession of certain described personal property, unlawfully detained by defendant, contains a sufficient averment as to the title of the property. *pp. 72, 73.*

SAME.— *Fraud.—Concealment.*—A purchaser of goods on credit, who at the time knows himself to be insolvent, and does not intend to pay for same, and fails to disclose his insolvency, perpetrates a fraud upon the seller which entitles him to disaffirm the sale and replevy the goods, unless the rights of innocent parties have intervened. *pp. 73-77.*

APPEAL AND ERROR.—*Assignment of Error.—Instructions.*—A joint assignment that the court erred in giving certain instructions is not available if either instruction is correct. *p. 77.*

From the Jay Circuit Court.   *Affirmed.*

*W. H. Williamson,* for appellants.
*Emerson E. McGriff,* for appellees.

HENLEY, J.—This is an action in replevin begun in the lower court by the appellees as plaintiffs. The complaint is in two paragraphs. Each paragraph of the amended complaint is sufficient to withstand a demurrer. It is alleged that appellees are the owners and entitled to the immediate possession of certain personal property, which is particularly described, and the aggregate value of which is $1,161.75; that appellants had possession of said property without right, and unlawfully detained the same from appellees.

It is said by the Supreme Court in *Krug* v. *McGilliard*, 76 Ind. 28: "The plaintiff may aver his title generally, and prove such facts as show a general or special property, and right of possession. It is sufficient for him to allege generally that he is the owner and entitled to the possession of the goods, and support it by proof of such facts as either show a general or special property in the goods with a right to the possession." In this case, each paragraph of the amended complaint also alleged facts which clearly amounted to fraud upon the part of appellants, and which amounted to a cause of action in appellee's favor. The principal question under the assignment of errors arises from the action of the lower court in overruling appellants' motion for judgment upon the answers to interrogatories notwithstanding the general verdict.

Interrogatory 12 was as follows: "Did the defendant Goodman at the time of the purchase of the goods in controversy, or at the time of their delivery, make any representations to the plaintiffs or their agent as to his solvency, or did he at said time do anything to conceal from these plaintiffs or their agent his true financial standing? Answer. No." It is contended that under the law of the State in cases of this kind, the *concealment* of the true financial condition of the defendant must have been the result of *positive acts* done by him, calculated to prevent the discovery of his real condition. The position taken by appellants' counsel is not tenable. The cases cited in support of their contention are not applicable to the facts alleged and proved in the case at bar. In this case it appears by the evidence, legally admissible under the issues formed, that appellees sold and shipped to appellant Goodman in 1896 a bill of goods amounting to about $1,200; that in 1895, appellant Goodman had purchased his stock of goods of his brother-in-law, one Davidovitch, and in payment therefor had executed to his said brother-in-law his notes for about $7,000; that in the spring and summer of 1896, said appellant Goodman purchased of

different wholesale dealers over $8,000 worth of goods, all to be delivered in August and September of 1896; that after the goods were delivered and before some of them were unpacked, the said Goodman confessed judgment in the circuit court of Jay county, Indiana, for $7,710 in favor of said Davidovitch, who caused an execution to issue to the sheriff upon such judgment, whereupon appellees begun this action to recover their goods.

It is shown that appellant Goodman was insolvent, and that he knew of his insolvency at the time the said purchases were made.    It was alleged in the complaint that said Goodman purchased said goods without any intention of paying for the same, and for the purpose of cheating and defrauding appellees.    The jury had the right to draw the inference that the said Goodman never intended to pay for the goods which he had purchased under the circumstances disclosed by the evidence.    We think the law is plain in this State that:    "Where a man, knowing himself to be insolvent, conceals his insolvency from the vendor of the goods, and buys the property not intending to pay for it, he perpetrates a fraud which will entitle the seller to reclaim his property. The principle which rules this case is thus stated by the Supreme Court of the United States in *Donaldson* v. *Farwell*, 93 U. S. 631.    'The doctrine is now established by a preponderance of authority, that a party not intending to pay, who, as in this instance, induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent not to pay for them, is guilty of a fraud which entitles the vendor, if no innocent third party has acquired an interest in them, to disaffirm the contract and recover the goods.    *Byrd* v. *Hall*, 2 Keyes 647; *Kilby* v. *Wilson*, Ryan & Moody 178; *Noble* v. *Adams*, 7 Taunt. 59; *Bristol* v. *Wilsmore*, 1 Barn & Cress. 513; *Stewart* v. *Emerson*, 52 N. H. 301; Benjamin on Sales, §440, note to American edition, and cases there cited.'    In addition to the authorities in the opinion which we have quoted, we refer to *Henshaw*

v. *Bryant*, 4 Scam. (Ill.), 97; *Patton* v. *Campbell*, 70 Ill. 72; *Donaldson* v. *Farwell*, 5 Bissell 451; *Seligman* v. *Kalkman*, 8 Cal. 207; *Bedault* v. *Wales*, 19 Mo. 36; *Dowe* v. *Sanborn*, 3 Allen 181; *O'Donald* v. *Constant*, 82 Ind. 212." *Brower* v. *Goodyer*, 88 Ind. 572.

Our Supreme Court have thoroughly disposed of appellant's contention that the concealment of the purchaser's financial condition must be by some positive act of his calculated to deceive the seller. In the case of *Brower* v. *Goodyer*, *supra*, Elliott, J., adopted 2 Pom. Eq. §906 as the law of this State. The rule so adopted is as follows: "In other words, a purchase on credit with a preconceived design on the buyer's part, formed at or before the purchase, not to pay for the thing bought, constitutes a species of fraudulent concealment." This court has strongly stated the rule in the case of *Tennessee Coal, etc., Co.* v. *Sargent*, 2 Ind. App. 458, when Reinhard, J., speaking for the court, said: "It is well settled that the vendor of personal property obtained from him by the fraud of the purchaser may bring replevin for the same against such fraudulent purchaser, unless the rights of innocent third parties have intervened; and a purchaser of goods who knows himself to be insolvent, *and fails to disclose such insolvency when buying such goods on a credit*, not intending to pay for them, perpetrates upon the vendor such a fraud as will entitle the latter to disaffirm the contract, and sue for the possession of the goods." To the same effect see *Peninsular Stove Co.* v. *Ellis*, 20 Ind. App. 491.

It will be seen that the courts of appeal in this State recognize the rule that a purchaser of goods on credit, who at the time knows himself to be insolvent, and who at the time of the purchase does not intend to pay for the same, and who fails to disclose his insolvency, perpetrates a fraud upon the seller, which entitles him to disaffirm the sale and replevy the goods, unless the rights of innocent third parties have intervened, and such action upon the part of the purchaser under such circumstances amounts to a fraudulent concealment.

Goodman *v.* Sampliner.

The case of *Swift* v. *Rounds* (R. I.), 35 Atl. 45, presents a state of facts almost identical with the case at bar, and in deciding that case, the supreme court of Rhode Island said: "In the case at bar, the declaration alleges that the defendant bought the goods in question upon credit, fraudulently intending not to pay for them, but to cheat the plaintiffs out of the value thereof. By the act of buying the goods of the plaintiffs, the defendant impliedly promised to pay for the same, which promise was equally as strong and binding as though it had been made in words or even in writing. The plaintiffs had the right to rely on this promise, and to presume that it was made in good faith. It turns out, however, according to the allegations aforesaid, that it was not made in good faith, but, on the contrary, was made for the purpose of deceiving the plaintiff into the act of parting with their goods, the defendant intending by the transaction to cheat them out of the value thereof. The fraud, then, consisted in the making of the promise, in the manner aforesaid, with the intent not to perform it. By the act of purchasing the goods on credit the defendant impliedly represented that he intended to pay for them. The plaintiffs relied on this representation, which was material and fraudulent, and was damaged thereby. All the necessary elements of fraud or deceit, therefore, were present in the transaction. * * * It was held that although a purchase of goods on credit by one who knows himself to be insolvent is not fraudulent, yet, where it is made with a preconceived design not to pay, it is fraudulent. * * * The defendant made it to appear, by the act of buying on credit, that he intended to pay for the goods in question, while in fact he intended to cheat the plaintiffs out of them, and to hold that such a transaction does not amount to fraud would be to make it easy for cheats and swindlers to escape the just consequence of the unrighteous acts. * * The authorities are overwhelming to the effect that it is a fraud to purchase goods intending not to pay for them, and that the vendor, upon discovering the fraud, may

Goodman *v.* Sampliner.

repudiate the sale and reclaim the property, or may sue in trover or in some other action of tort for the damages sustained by the fraud."

By the general verdict, under the issues, which verdict is sustained by the evidence, it was found that Goodman was insolvent at the time he purchased the goods in question; that he knew he was insolvent at said time; that at the time he purchased said goods he did not intend to pay for them; that he did not disclose his insolvency to the appellees; that he purchased said goods with the intent to defraud appellees out of the value of said goods. These findings would be sufficient to entitle appellees to a judgment. The answer to interrogatory numbered twelve does not therefore affect the general verdict of the jury. The facts presented by the record in this case are such as caused the learned judge in the case of *Dow* v. *Sanborn*, 3 Allen, at page 182, to say: "In its moral quality it is hard to distinguish it from larceny."

It is also contended by appellant that instruction numbered one, of the instructions given to the jury by the court upon its own motion, ought not to have been given. This discussion arises under the fifth cause assigned in the motion for a new trial, which is as follows: "That the court erred in giving to the jury instructions numbered one, two, three, four, and five on its own motion and over the objections and exceptions of the defendants." As appellant does not argue that instructions two, three, four, and five are erroneous, any objections to such instructions are waived. The assignment being joint, if either instruction is correct, the error is not available. The authorities upon this question of practice are numerous. Upon the facts presented by the record, the judgment of the lower court is correct.

Judgment affirmed.