[Civ. No. 1386.   First Appellate District.—October 26, 1914.]

ANNA BORGFELDT, Respondent, v. F. H. CURRY, Appellant.

FRAUD—TRANSFER TO DEFRAUD CREDITORS—CONSTRUCTION OF SECTIONS 3439 AND 3442, CIVIL CODE.—Sections 3439 and 3442 of the Civil Code should be liberally construed with a view to effect their purpose, which is to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach, or, in other words, to compel a person engaging in business to take the hazards and risks thereof as well as the chances of profit.

ID.—FRAUDULENT TRANSFER—SUFFICIENCY OF EVIDENCE TO SHOW.—In this action to quiet title to certain real property, in which defendant asserts an interest in the property, by virtue of the levy of an attachment thereon, and claims that a transfer of the property to plaintiff by her husband was fraudulent as against him, it is held that the evidence shows the transfer to have been made in contemplation of insolvency, which renders it void under sections 3439 and 3442 of the Civil Code, and that the finding of the trial court that the transfer was not fraudulent as to creditors is not sustained by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, for Appellant.

Hillyer, Stringham & O'Brien, for Respondent.

RICHARDS, J.—The plaintiff brought this suit to quiet her title to two pieces of real property in San Francisco theretofore conveyed to her in consideration of love and affection by her husband Christoph J. Borgfeldt. F. H. Curry, the defendant, claimed an interest in the property by virtue of the levy of an attachment thereon in an action which he, as assignor of the Banca Svizzera Americana of Locarno, brought upon two joint and several promissory notes theretofore made by said Christoph J. Borgfeldt, and three other persons or corporations, to said bank, it being claimed by said Curry that the transfer of said real property to plaintiff was fraudulent as against the holder and owner of said promissory notes.

In the present action Curry answered, setting up the execution of the notes to the bank, and the assignment thereof to him, and pleaded that the said transfer was made by said Borgfeldt while insolvent or in contemplation of insolvency, and was therefore void as to him and his assignor by virtue of the latter's ownership of the promissory notes hereinbefore mentioned at the time of said transfer.

Upon the trial the court found the facts in accordance with the allegations of the defendant's answer with the exception of the allegation that the transfer was fraudulent as to creditors, and accordingly quieted plaintiff's title to the real property. It denied the defendant's motion for a new trial, and the appeal is from such order and from the judgment.

It is contended by the appellant that the evidence does not support the judgment inasmuch as it shows that said transfer was in fact made by plaintiff's husband while insolvent or in contemplation of insolvency.

The law applicable to the question is found in sections 3439 and 3442 of the Civil Code. Those sections read respectively as follows:

Section 3439. "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any

person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.''

Section 3442. ''In all cases arising under section twelve hundred and twenty-seven, or under the provisions of this title, except as otherwise provided in section thirty-four hundred and forty, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration; provided, however, that any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors.''

(We need not consider sections 1227 and 3440 referred to in the last quoted section, as it is not claimed that they have any bearing upon the question before us.)

These sections, in common with the remainder of the code, should be liberally construed with a view to effecting their purpose. That purpose undoubtedly is to prevent debtors from placing property which legitimately should be available for the satisfaction of demands of creditors beyond their reach, or, in other words, to compel a person engaging in business to take the hazards and risks thereof as well as the chances for profit. If misfortune should overtake him he must face it himself, and not attempt to saddle it on to those who have extended him credit and trusted in his commercial integrity.

In the case at bar the transfer of the property involved was made about three weeks after the great earthquake and fire which occurred in San Francisco on April 18, 1906. At the time of the catastrophe Borgfeldt was engaged in a grocery and retail and wholesale liquor business with a brother as partner, and in addition owned an interest in another business. Both of these businesses were entirely wiped out by the fire, and the customers widely dispersed. The books of the grocery and liquor concern showed accounts payable amounting to ten thousand dollars, and accounts receivable amounting to about nine thousand dollars. It subsequently turned out that the firm collected ninety per cent of these accounts, and also collected a certain amount of insurance; but it is a matter of common knowledge that at the time in question retail merchants in San Francisco whose businesses were located in the burned area did not expect to be able to collect any such

percentage of their accounts, to say nothing regarding the uncertainty of collecting fire losses. For three months after the disaster Borgfeldt had no income, and on the day before the transfer embarked in a new business, the future of which in the unsettled condition of San Francisco neither he nor any one else could predict. Of the two promissory notes above referred to one became due three days after the date of the transfer by Borgfeldt to his wife, and the other eighteen days after said date. The financial condition of his cosigners of the promissory notes was also badly affected by the San Francisco disaster. Every fair inference arising from the testimony as to Borgfeldt's circumstances and financial prospects at the time characterizes the transfer of this real property as one made to save it from the almost certain claims of creditors. We have, moreover, his own admission to the following effect: "The real reason why this transfer was made to my wife was this, that a year or so before the fire I began to go into this mining proposition; I stuck in $6,000 first; then I put in another $2,500; and my wife thought it would be better, if I go to work and put all my money in the mining, and she gets nothing for herself, so it was agreed then that I turn the property over to her, and then when this fire came along *and all mine was gone—if the property had been burned out that would have been all gone*—so for that reason the transfer was made."

That the object of the transfer was to save the property from the claims of creditors rather than to make an absolute gift of it to the plaintiff, may also be legitimately inferred from the fact that six months after the transfer the plaintiff borrowed upon the security of the property the sum of five thousand dollars, which was placed in the business enterprise above mentioned in which her husband had embarked, stock in the concern however being taken in the plaintiff's name.

The principal argument in the briefs of both appellant and respondent is addressed to the question as to whether at the time of the transfer Borgfeldt was actually solvent or insolvent. Appellant constructs from the testimony a table of assets and liabilities, which he contends show Borgfeldt to be insolvent. Respondent takes the same table, and contends that it proves the contrary. The difference between them arises from the item of one thousand dollars, previously referred to as having been put into a new business on the day

preceding the transfer, the appellant contending that this sum should not be regarded as assets, and the respondent contending that it should, and that so regarding it, the assets of Borgfeldt were superior to his liabilities by the sum of about three hundred dollars. In the view we take of the case, however, it matters not whether this sum is included in Borgfeldt's assets or not. Admitting that by a small margin he may be shown to have been solvent, it still remains patent from the evidence that the transfer was made in contemplation of insolvency, and as such, is equally within the terms of the sections of the code cited.

For the reasons stated the finding of the trial court is not supported by the evidence. The judgment is therefore reversed and the court directed to enter a judgment for the defendant for his costs.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1914.