[Civ. No. 4027. Second Appellate District, Division Two.—April 9, 1923.]

G. W. SOUTHWICK, Respondent, v. MARY THERESA MOORE, as Administratrix, etc., et al., Appellants.

[1] FRAUDULENT CONVEYANCES — INSOLVENCY OF GRANTOR — WANT OF CONSIDERATION—SUFFICIENCY OF EVIDENCE.—In this action by a creditor of a deceased person to set aside a deed from the deceased to his wife on the ground that it was given to defraud creditors, the evidence sustains the finding that the deed was without consideration and that the grantor was insolvent at the time of its execution.

[2] ID.—CONVEYANCE OF HUSBAND TO WIFE—WITHHOLDING OF DEED FROM RECORD—CONTINUED ACTS OF OWNERSHIP—FRAUDULENT INTENT.—Where a husband made a conveyance of the only property he owned to his wife and she withheld the deed from record, the exercise of acts of ownership by the husband subsequent to the execution of the deed with the knowledge of the wife is strongly suggestive of fraudulent intent as to creditors.

[3] ID.—REDEMPTION FROM FORECLOSURE SALE—TITLE OF GRANTEE.— Where a husband in fraud of creditors made a conveyance of property to his wife and she withheld the deed from record, the wife by a redemption of the property from a mortgage foreclosure sale did not become an innocent purchaser, since she was a party to the fraud.

[4] ID.—EVIDENCE—CONTINUED OWNERSHIP OF PROPERTY—STATEMENTS OF GRANTOR.—In an action by a creditor of a deceased person to set aside a deed from the deceased to his wife on the ground that

----

4. Admissibility of declarations of grantor or vendor in possession as to fraudulent conveyance, note, 3 Ann. Cas. 787.

it was given to defraud creditors, evidence of statements made by the grantor subsequent to the delivery of the deed to the effect that he still owned the property is admissible.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. B. Canfield, Frank L. Rabe and William G. Griffith for Appellants.

Richards, Heaney & Price for Respondent.

CRAIG, J.—This is an action by the plaintiff as a creditor of Thomas W. Moore, deceased, to set aside a deed from said decedent to his wife, Mary Theresa Moore, on the ground that the deed was given to defraud creditors. By this proceeding it was sought to claim the property conveyed and have it declared that of the estate of Thomas W. Moore, and as such applied to the satisfaction of the plaintiff's claim, which had been allowed and approved before the filing of the action, in the sum of $3,457.09. The deed in question was executed on the twenty-fourth day of March, 1898, and purported to convey a part of the Las Positas or Hope ranch, in the county of Santa Barbara. The case was tried before the superior court of Santa Barbara County and judgment rendered in favor of the plaintiff by which it was held that the deed was null and void as against the plaintiff, and it was adjudged that the property described therein is a part of the estate of Thomas W. Moore, deceased, to be applied to the payment of the plaintiff's claim.

The principal contention of the appellant is based upon the assertion that certain findings are not supported by the evidence. There is also a question raised that the court committed error in connection with the admission of evidence.

The following further statement of the facts is necessary to a clear understanding of the issues: Mary Theresa Moore was a daughter of Thomas Hope, who at one time owned the Rancho Las Positas, containing in all 3,281 acres. After the death of Thomas Hope, his ranch was distributed to his widow and six children, one of whom was Theresa Hope.

Later this property was partitioned among the owners in common and by the partition Mary Theresa Moore (nee Hope) and her brother, James C. Hope, received lots 5 and 5½, which included the property described in the deed in question in this case. On May 19, 1890, James C. Hope convey his share of the property allowed to him by the partition to Thomas W. Moore, husband of the defendant herein. The consideration for the deed from James C. Hope to Moore was paid by the defendant from her separate funds and amounted to about $20,000. Thereafter, Moore brought suit to quiet title to the property, making his wife defendant. Through that proceeding and other necessary steps, he removed what were apparently certain clouds upon the title. In 1893 defendant executed a quitclaim deed of this property to her husband; in 1894 he conveyed it to Mrs. Moore, the deed expressly stating that the estate alienated should be her separate property. Thereafter he instituted proceedings and secured discharge from his debts by voluntary insolvency, receiving the final discharge on June 16, 1897. One of the debts listed and discharged was the obligation for the money advanced by defendant to purchase the property from her brother. On the following day the defendant conveyed the property involved in this suit to her husband as his separate property and for a recited consideration of $16,000. As heretofore stated, in 1898 he executed a deed of the same property to the defendant; this he delivered to her in the office of H. C. Booth, an attorney at law. In making the delivery Moore said to Mrs. Moore, "This is the deed to your property." The defendant kept the deed in a private box in her home until a few hours before the death of her husband on the nineteenth day of March, 1916. She then gave it to her attorney and instructed him to record it, which he did. All of the previous deeds between the parties were recorded immediately after being executed. During the entire period from March, 1898, until March, 1916, Moore dealt with this property as his own, at all times holding himself out as its owner, to the full knowledge of the defendant; he executed many leases and other instruments of a proprietary character, of which seventy-five were recorded. In some of these instruments in which the representation appeared that Thomas W. Moore was the legal owner, the defendant joined, signing as his wife. The prop-

erty was at all times after Mrs. Moore's last deed to her husband assessed to him, and after the year 1900 he paid the taxes. At the time of Moore's death there was a mortgage upon the premises for about $24,000, owned by the Central Bank. This was subsequently foreclosed and then Mrs. Moore redeemed the property from its encumbrance.

The claim of the plaintiff consisted of a promissory note dated September 16, 1914, in the sum of $3,480 for services rendered in a certain sale of real estate. This note was unsecured. The plaintiff testified, however, that he extended the credit in reliance upon the ownership by Moore of the ranch in question. That he heard a rumor to the effect that the property had been transferred to Mrs. Moore, and examined the records of Santa Barbara County and thereby ascertained that the title appeared there to be vested in Moore.

The court found that on March 24, 1898, "Thomas W. Moore was and for a long time prior thereto had been insolvent"; also referring to the deed in question, "That there was and is no consideration for said attempted conveyance or said purported deed"; further, that the deed was made with the intention to hinder, delay and defraud the creditors of Thomas W. Moore, present and future, and that Mary Theresa Moore actively participated in such fraud. These are the findings which appellant contends are not supported by the evidence.

[1] The evidence relied upon by the respondent to establish the insolvency of Moore is the following: The county auditor testified from the records in his office that the only property assessed to Moore for the year 1898 was the land involved in this action, with furniture, wagons, and horses. Mrs. Moore testified that she did not know of any other property belonging to him. In 1898 Moore's personal property was sold by the state for unpaid taxes for that year. The taxes on the land in question were not paid and had not been paid since 1896. During the year 1898, upon two occasions, Moore transferred a lease to secure a debt. A mortgage for $4,960 and a trust deed for $12,000 existed as security for obligations, these liens both being upon the ranch here in dispute. Since his discharge in insolvency and, in fact, until 1910, Moore had no business or occupation of profit except to lease out a part of the ranch, where the

Moores lived but which they did not farm. No witness testified to his earning any money during this period, except in overseeing a few transactions for Mrs. Moore. A debtor is insolvent when he is unable to pay his debts from his own means as they become due. (*In re Ramazzina,* 110 Cal. 488, [42 Pac. 970]; *Washburn* v. *Huntington,* 78 Cal. 573 [21 Pac. 305].) Measured by this standard these facts are sufficient to sustain the finding of insolvency. They show that when the deed was executed Moore was a debtor; they constitute evidence from which the trial court might fairly infer, in fact, could hardly have avoided the conclusion, that he did not possess money or property with which to pay such debts. The evidence to sustain the finding that the deed in question was without consideration is also ample. If Mrs. Moore had formerly held any claim against Moore it was discharged by the proceeding in insolvency. The only debt which is shown to have existed was for the advancement made by Mrs. Moore in the way of payment to her brother for the deed to Moore. Appellant insists that this was not the claim presented by Mrs. Moore in the insolvency proceeding. However, we think the evidence is such as to permit the deduction that this was the same claim, and all inferences are to be so drawn, if possible, as to sustain the findings. One note of Moore's discharged in insolvency was dated May 10, 1890. The transaction by which James C. Hope transferred the ranch to Moore occurred at almost the same time, Hope's deed to Moore being dated May 19, 1890. In listing the claim for the note above mentioned, which when presented in the insolvency proceeding, totaled $14,395, principal and interest, Moore's petition showed Mrs. Moore as a creditor for the principal sum of $10,000 as ''indebtedness accrued from 1890 to 1896'' upon notes for money borrowed and advanced during that period. This surely included the consideration for the purchase of the ranch from James C. Hope. Besides, if any other indebtedness existed against Moore in her favor, the burden rested upon her, the defendant, to prove it if she would avoid the disadvantage of the finding that the deed in question was without consideration. On the contrary, at one point while testifying, she said that she did not remember that at the time this deed was made Mr. Moore owed her any money.

Having concluded that the evidence sustains the finding that the deed of March, 1890, was without consideration, and that when it was executed Moore was insolvent, it becomes unnecessary to consider the intent of Mrs. Moore or determine whether or not she designedly participated in fraud which her husband may have perpetrated in making the deed. (*Knox* v. *Blanckenburg,* 28 Cal. App. 298 [152 Pac. 59]; *Judson* v. *Lyford,* 84 Cal. 508 [24 Pac. 286]; *Ross* v. *Wellman,* 102 Cal. 1 [36 Pac. 402].) We pass to a consideration of the evidence as supporting the finding that the deed was made to hinder, delay, and defraud creditors.

[2] If there could be any dispute as to Moore's insolvency before the deed was executed there certainly can be no shadow of doubt that by making the conveyance of the only property he owned he became insolvent and that the transfer was made "in contemplation of insolvency." (*Emmons* v. *Barton,* 109 Cal. 662 [42 Pac. 303]; *Borgfeldt* v. *Curry,* 25 Cal. App. 624 [144 Pac. 976]; *Knox* v. *Blanckenburg, supra.*) Such a transfer is void as to existing creditors. (Sec. 3442, Civ. Code.) Respondent was not an "existing creditor" when the deed was executed. A deed without consideration may be void as made with the specific intent to enable the grantor to defraud future creditors. (*Schell* v. *Gamble,* 153 Cal. 448 [95 Pac. 870]; *Bush & Mallett Co.* v. *Helbing,* 134 Cal. 676 [66 Pac. 967].) Whether such intent is shown is a question of fact and not one of law. (Sec. 3442, Civ. Code.) However, as bearing upon the point now under consideration, to wit, the *bona fides* of Moore when he made the transfer, the proof sufficient to establish fraud as to existing creditors supplies a *prima facie* case of fraud against those whose claims arose subsequently. (*Hemenway* v. *Thaxter,* 150 Cal. 737 [90 Pac. 116].) The continued control of the property after the conveyance is further evidence of fraudulent intent. (*Purkitt* v. *Polack,* 17 Cal. 327; *Bush & Mallett* v. *Helbing, supra; Murphy* v. *Mulgrew,* 102 Cal. 547 [41 Am. St. Rep. 200, 36 Pac. 857].) The exercise of acts of ownership and claims of ownership by Moore subsequent to the execution of the deed with the knowledge of Mrs. Moore is strongly suggestive of fraud. The deed was ready to to be placed on record at any moment, although Moore was enabled to trade on the credit of the ownership of the ranch. It is apparent that he knew that it was unrecorded, otherwise

he would not have assumed the control of the estate as owner. He thus participated in the secrecy, and may properly be held to have intended deception through the concealment of the fact that a transfer of title had occurred.

As said in *Schell* v. *Gamble,* the burden of proof is upon the creditor to establish the fact of the fraudulent intention of the grantor; that burden is, however, sustained where a *prima facie* case is made out. As we have shown in the instant case, the creditor added other evidence to a *prima facie* showing. Of course, the evidence was circumstantial, but that is usual in such cases. It is also true that the record contains other testimony, especially that of the appellant, tending to contradict the respondent's proof. It has not been necessary to give this extended consideration, since it is not the province of an appellate court to weigh and contrast the evidence.

[3] The redemption of the property from the foreclosure sale did not give appellant a clear title as against the claim of a creditor of the deceased under the circumstances of this case. By the redemption she merely removed the lien of the mortgage. Being the grantee under the deed of March, 1898, and a party to the fraud against the creditors of Moore, she could not become an innocent purchaser by the redemption as to them. (*Phillips* v. *Hagart,* 113 Cal. 552 [54 Am. St. Rep. 369, 45 Pac. 843].)

[4] Appellant contends that it was error to permit witnesses to testify as to statements made by Moore, subsequent to the delivery of the deed, to the effect that he still owned the property. It is well established that such evidence is admissible where the issue is one of fraud. (*Bush & Mallett Co.* v. *Helbing, supra.*) *Emmons* v. *Barton* is not in point, because it does not contain such an issue nor was concealment and deception charged therein. We have examined other alleged errors on the part of the court in admitting evidence and find nothing therein of such importance as to warrant a reversal, even if slight technical errors occurred.

Judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 7, 1923.