## JEGGLE v. MANSUR et al.

(Circuit Court of Appeals, Ninth Circuit. February 28, 1927. Rehearing Denied March 28, 1927.)

No. 4998.

1. **Fraudulent conveyances** ⬅113(1)—**Debtor's conveyance in trust to enable dummy to guarantee obligations, kept secret, and not recorded, to maintain debtor's credit, held void as to creditors (Civ. Code Cal. §§ 3439, 3442).**

Where debtor conveyed property in trust for benefit of stenographer employed by attorneys representing certain creditors, for purpose of having stenographer, who acted merely as dummy, guarantee obligations becoming due, in order to procure extension of time for payment, it being entirely optional with her what claims, if any, she would guarantee, and conveyance was not recorded, but was kept secret, in order not to injure debtor's credit, *held* that conveyance was void, as made to hinder and delay creditors, under Civ. Code Cal. § 3439, and as voluntary conveyance by insolvent, within section 3442.

2. **Fraudulent conveyances** ⬅154(1)—**Withholding instrument of lien or conveyance from record, to maintain debtor's credit, is evidence of fraud.**

To withhold, pursuant to agreement, an instrument of lien or conveyance from public records, for purpose of maintaining debtor's credit, is in itself evidence of fraud.

3. **Courts** ⬅366(16)—**"Insolvency," as used in state statute making insolvent's voluntary conveyance void as to creditors, must be understood with meaning intended by state Legislature (Civ. Code Cal. §§ 3077, 3442, 3450).**

Word "insolvency," in Civ. Code Cal. § 3442, making voluntary transfer of property by one while insolvent, or in contemplation of insolvency, fraudulent and void as to existing creditors, must be given meaning intended by state Legislature, which, under sections 3077, 3450, is inability to pay debts from debtor's own means as they become due, and not the meaning given thereto in Bankruptcy Act (U. S. Comp. St. § 9585 et seq.).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; William P. James, Judge.

Suit by Fred Mansur, as trustee in bankruptcy of the White Star Oil & Refining Company, bankrupt, against E. M. Jeggle and another. Judgment for plaintiff, and defendant Jeggle appeals. Affirmed.

Hudson P. Hibbard, Louis Kleindienst, and Hibbard & Kleindienst, all of Los Angeles, Cal., for appellant.

Fred Mansur, George B. Ross, and Byron C. Hanna, all of Los Angeles, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. [1] As trustee in bankruptcy of the estate of the White Star Oil & Refining Company, hereinafter referred to as the White Star Company, the plaintiff, who is the appellee, brought this action to set aside two conveyances of the White Star Company, dated respectively December 12 and December 17, 1923. The first, a trust instrument of extraordinary character, was to the defendant Hellman Commercial Trust & Savings Bank, for the benefit of the appellant, E. M. Jeggle, to whom the second instrument, absolute in form, was made directly. Jeggle was a young woman stenographer in the employ of a firm of attorneys representing certain creditors of the White Star Company. The property covered by the trust deed was listed as of the value of over $200,000, and that described in the second deed approximately $130,000; the latter deed is thought to be but an incident to the first, and stands or falls with it.

Invoking the authority of sections 70 and 47 of the Bankruptcy Act (Comp. St. §§ 9654, 9631), which confer upon him all the rights that a judgment creditor would have as of the date of the filing of the petition in bankruptcy, July 7, 1924, the plaintiff contends that the conveyances are voidable under sections 3439 and 3442 (either or both) of the California Civil Code, the material parts of which are as follows:

Section 3439: "Every transfer of property or charge thereon made, * * * with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest. * * *"

Section 3442: "* * * Any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent and void as to existing creditors."

It will be noted that, under the first provision, the question is solely one of intent, while under the other intent is not important the conditions being want of consideration and insolvency.

In December, 1923, the White Star Company was in the early stages of an oil enterprise. It had sold some of its stock outright, and for other shares it held subscriptions aggregating a considerable sum. It had purchased some properties, and had contracts for the purchase of others, for which it was heavily indebted. In developing and operating these properties, and generally in carrying on its business, it had incurred obligations, for the payment of which it was without funds. Its current delinquent accounts, great and small, owing to numerous creditors, aggregated approximately $200,000; in addition, it had outstanding trade acceptances amounting to about $90,000.

The transaction in question was precipitated by the dishonor, for want of funds, of one of its checks given to the Republic Supply Company, for either $5,000 or $10,000 (the record is not clear), to which company it had overdue obligations in excess of $75,000. This creditor was represented by Hibbard & Kleindienst, a firm of attorneys at Los Angeles, in whose office Miss Jeggle was employed. One Ratliff, the promoter and managing officer of the White Star Company, was called in for a discussion of the financial condition of his company, and there ensued other conferences at the office of these attorneys, participated in by representatives of the Republic Supply Company, Ratliff, the attorney for himself and his company, and Kliendienst, who was not only attorney for the Republic Supply Company, but expected to, and a few days later did, act for certain other creditors. Ratliff, the promoter, was naturally hopeful of being able to work himself out and to pay his creditors, if left alone. He was willing to give security directly to these creditors, if knowledge thereof could be withheld from the public; he feared that, if made public, an incumbrance would render the further sale of stock difficult, and that, advised thereof, other creditors would take legal action resulting in disaster.

Appreciating the cogency of these considerations, and undoubtedly realizing that the open taking of security would probably bring on a collapse of the enterprise, through bankruptcy proceedings or otherwise, with consequent sacrifice to themselves and all other creditors, the conferees adopted the expedient of having the debtor give the trust

conveyance in controversy, with the understanding that it was to be kept from the records, and generally from the knowledge of the public. It was to be put into such form that it would, in case of need, give them an advantage over other creditors, and yet not in such form that, in case they desired to take legal proceedings by attachment or otherwise, they could be said to have postponed the maturity date of their obligations, or to have taken security. To quote from a letter written by Kleindienst, on December 12th, to a large creditor, whom he hoped to have come into his group: "The trust deed and the security run to E. M. Jeggle, who was selected by our firm. It was our intention not to grant extensions for any definite time, nor did we desire that our clients take additional security, for the reason that, in either event, it would be impossible to sue and attach under the laws of California, should we deem it expedient to do so."

Thus protected, these creditors were, as Ratliff puts it, to become "buffers" between the company and other creditors; that is, the impression was to go out that they were convinced of the financial soundness of the White Star Company, and the others, being thus lulled into a feeling of security, would remain inactive.

In the trust deed the White Star Company is called the trustor, the Hellman Bank the trustee, and Miss Jeggle the beneficiary. Generally it recites that the trustor has obligations due and about to become due, which it desires to have the beneficiary guarantee for the purpose of procuring an extension of time for payment. It was left entirely optional with Miss Jeggle whether she would guarantee any claims, and, if so, what claims; but it was agreed that, in case she should so guarantee any claim, the trustor would pay, not the claimant, but her, the amount thereof, within 120 days of the date of the deed. The instrument recites that it is made "in consideration of said obligation" of the beneficiary, though, as we have seen, she assumed no obligation to do anything, and would incur none, unless and until she chose to guarantee some claim. Financially she was without substantial responsibility, and admittedly she was a mere "dummy" in the transactions.

By Kleindienst the instrument was shown to the trust officer of the bank and then taken back to his office, where it was kept in the firm's safe, no public record of it having been made. It seems that both on December 12 and again on December 19, 1923, when the second conveyance, absolute in form, was made, Miss Jeggle signed and handed to Kleindienst a writing, addressed to the Republic Supply Company, Enach Perforating Company, Oil Well Supply Company, R. H. Herron Company, Rotary Disc Bit Company, Asbury Truck Company, Graver Corporation, Thos. N. Pike Company, and Lee Wilkinson Tool Company, of the following tenor:

"Gentlemen: In consideration of your granting to the White Star Oil & Refining Company an additional 120 days within which to pay any indebtedness due to you, or any of you, during which time you are not to file any action against the corporation for the collection of your respective accounts, or any part thereof, I hereby guarantee payment of your accounts, and each of them, whether in your hands or in the hands of an assignee, together with interest thereon at the rate of 7 per cent. per annum from date of indebtedness to date of payment, to the extent, and to the extent only, of security consisting of stocks and property conveyed or about to be conveyed to me by the said White Star Oil & Refining Company and others. I further guarantee, within the limitations of the security above mentioned, to pay any reasonable attorney's fee which you or any of you may agree to pay Messrs. Hibbard & Kleindienst for services rendered by them in guarding your interests, through litigation or otherwise, and involving the White Star Oil & Refining Company, its stockholders, officers, subscribers, or incorporators.

"You and each of you are hereby given permission to extend the time for the payment of the indebtedness due you respectively through one or more extensions, and either before or after suit is filed, without affecting in any way my obligation hereunder, except that you shall not institute legal proceedings for 120 days, and you may, if you are so advised, institute action, under this guaranty without exhausting your remedies against it or its stockholders.

"As my guaranty hereunder is limited to the security which I have received, my guaranty is upon condition that you share ratably according to the amounts of your respective claims, including attorney's fee as hereinbefore provided. This shall apply whether or not you shall act in concert or separately. If at any time you may so desire, you may withdraw any part or all of your claims from this guaranty.

"Yours very truly,        E. M. Jeggle."

The instrument was passed from Miss Jeggle, the stenographer, to Kleindienst, her employer, who was or soon became attorney

for all the addressees, except the Graver Corporation. Kleindienst testifies that he delivered it to one Coates for the Republic Supply Company, but significantly adds that such delivery was in his (Kleindienst's) office, and Coates told him to keep it there. There was no other delivery.

When we consider the last sentence of the instrument and the circumstances of the so-called "delivery," together with the fact that Miss Jeggle never received from any one of the creditors named any extension of time for the payment of his claim, the intent of these creditors either to have security or not to have it, as would best suit their interests from time to time, is put beyond all doubt. It was a suitable setting for jugglery.

On April 22, 1924 (a period of four months having elapsed), the two deeds were recorded. Six days later the board of directors of the White Star Company was increased from seven to nine members, five of those elected being representatives severally of these creditors. Three days thereafter the general manager selected by them sent a circular letter to the creditors generally, urging upon them that they extend the time for the payment of their claims, giving as reasons therefor that the management of the White Star Company was then controlled by creditors, and that "there are certain contracts existing which would wipe out the assets in so far as the general creditors were concerned, if separate actions were taken."

While, in testifying, he stated that in these "certain contracts" he included the Jeggle deeds, he did not advise the creditors of their character, or of the relation of his directors or their principals thereto. There were no further material transactions prior to the filing of the involuntary petition in bankruptcy about sixty days later.

It is not highly important that Ratliff hoped to be able to pay all of his creditors, or that the favored creditors may have shared in this hope. In re Elletson Co. (D. C.) 174 F. 859, 864. Nor, if the debtor had possessed other property ample in amount to satisfy all claims, would that fact be controlling. Benson v. Harriman, 55 Cal. App. 483, 485, 204 P. 255. In the most favorable view to appellant, the purpose of what was done was by unfair means to delay other creditors, and "delaying" is denounced, as well as "defrauding." The plan adopted not only involved secrecy, but was otherwise so designed that it could be readily employed to deceive and overreach other creditors.

[2] To withhold, pursuant to agreement, an instrument of lien or conveyance from the public records, for the purpose of maintaining the debtor's credit, is in itself evidence of fraud, in some jurisdictions held to be conclusive. In re Duggan (C. C. A.) 183 F. 405; National Bank v. Shackelford, 208 F. 677; Id., 239 U. S. 81, 36 S. Ct. 17, 60 L. Ed. 158; In re National Boat & Engine Co (D. C.) 216 F. 208, 214; Rogers v. Page (C. C. A.) 140 F. 596, 605; Manders v. Wilson (C. C. A.) 235 F. 878, Ann. Cas. 1918A, 1052. If here we view that fact only as a circumstance to be considered together with the other remarkable features of the transactions, we have no doubt that the case comes within the denunciation of section 3439.

The suggestion that the infirmity does not affect the rights of the favored creditors, other than the Republic Supply Company, because they did not directly participate, is without merit. If they came into the transaction at all, or have any rights under the conveyances, they must claim through the agency of Kleindienst, who had full knowledge of and actually engaged in all that was done.

[3] In view of the conclusion we have thus reached under section 3439, it is not thought to be necessary fully to discuss section 3442, although upon consideration we concur with the lower court in holding that under this section as well the conveyances are void. Briefly it may be said that while, as contended by appellant, either a pre-existing obligation or forbearance to sue, or a waiver of lien rights, might constitute a sufficient consideration, the evidence does not support the view that either of such considerations was actually given for or in reliance upon the conveyances. As the term is defined in the National Bankruptcy Act, the evidence is probably insufficient to show insolvency; but as used in section 3442 it is to be understood with the meaning intended by the Legislature of California, and it seems to be settled that under the rule prevailing in that state a debtor is insolvent when he is unable to pay his debts from his own means as they become due. California Civil Code, §§ 3450, 3077; Southwick v. Moore, 61 Cal. App. 585, 215 P. 704; Bell v. Ellis, 33 Cal. 620, 625; Sacry v. Lobree, 84 Cal. 41, 23 P. 1088; Cook v. Cockins, 117 Cal. 140, 48 P. 1025. In that sense, undoubtedly, the White Star Company was insolvent.

We have considered the several assignments involving rulings of the court in receiving and excluding evidence, but find them without substantial merit.

The judgment will be affirmed.