[Sac. No. 4592. In Bank.—February 21, 1933.]

DIXON LUMBER COMPANY (a Corporation), Respondent, v. LILLIAN B. PEACOCK, Appellant.

Brantley W. Dobbins and Leo C. Dunnell for Appellant.

F. F. Marshall and W. U. Goodman for Respondent.

THOMPSON, J.—This action was commenced by the plaintiff to set aside conveyances of certain property to

the defendant by her husband, and the appeal is from a judgment entered in favor of the plaintiff.

The facts necessary to an understanding of the controversy are as follows: Appellant and her husband had been married thirty-seven years prior to the divorce which will shortly be mentioned. Some time before the conveyances of the property, according to the testimony of appellant, her husband was living with another woman. They separated February 27, 1928, although they had not lived together for a long time prior to that date. There were two insurance policies on F. I. Peacock's life in which his wife, the appellant, was named as beneficiary. During the latter part of May, 1929, he was desirous of realizing cash on the policies by a loan thereon. The agent for the insurance company advised Peacock that it would be necessary to have his wife's signature. In consideration of appellant executing an assignment of her interest in the policies, Peacock assigned to her a second mortgage on certain real estate known as the ''Rattenbury mortgage'', in the principal sum of $2,500, which in the brief of appellant is described as being of the value of about $2,000. Peacock received from the insurance company the sum of $1890 about June 2, 1929. About the same time appellant told her husband that she was going to get a divorce and ask for everything he had in view of the fact ''that this woman that he was living with was getting most of what he had or spending a great deal of it''. Whereupon Peacock agreed with his wife to transfer to her the other property, in litigation, their home at Dixon prior to separation, upon which they had declared a homestead, provided that such conveyance relieved him from ''any further responsibility for caring'' for her and their minor daughter. Accordingly, on June 3, 1929, F. I. Peacock executed a deed conveying the property to his wife, which was subsequently acknowledged and recorded. The home was declared to be of the value of approximately $20,000 when homesteaded, but subsequently sold for $11,500. We are furnished no other or clearer idea of its value. On August 2, 1929, the appellant signed and verified a complaint, which on account of her ill health was not filed until December 23, 1929, in which complaint she sought a divorce from her husband on the ground of desertion which started February

27, 1928. By the complaint she asked for the custody of their minor daughter, but asked for no support for herself or for their child. She also averred that there was no community property. The interlocutory decree was granted March 17, 1930, and the final decree March 27, 1931.

The respondent commenced an action on December 9, 1929, or six months after the transfer, to recover the sum of $1930.33 from F. I. Peacock. Judgment was rendered in its favor January 13, 1930. A writ of execution was issued to the sheriff of Solano County on January 15th and returned unsatisfied by him on January 20, 1930. There is evidence, however, to the effect that F. I. Peacock was at the time of the execution and for two years or more prior thereto living and doing some business in Alameda County. The court made a finding which the appellant says is not justified by the evidence and which for convenience, following the briefs of both parties, we have divided so that it may be stated in three parts, as follows:

1. The assignment of the "Rattenbury mortgage" was voluntary and without any valuable consideration passing from defendant to her husband F. I. Peacock.

2. The deed to the real property described in the complaint was voluntary and without any valuable consideration moving from the grantee to the grantor, and

3. F. I. Peacock was insolvent at the time of the assignment of the mortgage and deed of the realty, and the assignment and conveyance of the property hindered and defrauded the plaintiff, and left F. I. Peacock with no property not exempt from execution from which the claim of plaintiff could be satisfied.

With respect to the first division the whole question is: Was the release by appellant of all her right, title and interest in the insurance policies a valuable consideration for the assignment? It must be borne in mind that F. I. Peacock had separated from plaintiff before the assignment was discussed or executed. In her situation she undoubtedly had the right to institute an action for the maintenance of herself and daughter and a division of the community property. (Sec. 137, Civ. Code.) Had she submitted her predicament to the judicial tribunal and had it assigned to her the "Rattenbury mortgage" and to him the life insurance policies with their accumulated cash

value it seems fairly reasonable to assert that such action would have been beyond question. Is there anything which makes it impossible for the parties to agree upon that which might have been done for them by the judicial body, or renders the agreement void of consideration? The logical conclusion is the negative, as more fully appears from the following discussion. ■ It has been determined that an insurance policy in legal contemplation is property and that the proceeds of a policy, the premiums on which have been paid from the community, are community property. (*New York Life Ins. Co.* v. *Bank of Italy*, 60 Cal. App. 602 [214 Pac. 61]; *Blethen* v. *Pacific Mutual Life Ins. Co.*, 198 Cal. 91 [243 Pac. 431].) It has also been held while the insured may have the right, by contract with the company, to change the beneficiary in such a policy without the wife's consent where she is originally named as such, yet any such change without her consent and without a valuable consideration is voidable as to her, as she may maintain an action after his death to recover her one-half of the community. (*New York Life Ins. Co.* v. *Bank of Italy, supra,* and *Blethen* v. *Pacific Mutual Life Ins. Co., supra.*) It thus becomes manifest that appellant's relinquishment of her rights in the policies amounted to the release by her of a valuable property right. The finding to the contrary is, therefore, unsupported.

■ A very similar situation is presented by the second part of the finding. By agreement of the parties, the appellant relinquished her right to seek support for herself and also said she would ask for none for the minor daughter. It was not only her right, if deserted, to have maintenance for herself and daughter, but that right might, in the discretion of the court, have been protected and secured by the appointment of a receiver. (Sec. 140, Civ. Code; *Murray* v. *Murray*, 115 Cal. 266–274 [47 Pac. 37, 56 Am. St. Rep. 9, 37 L. R. A. 626].) Indeed, a deserted wife is so nearly in the position of a creditor that she may maintain an action to set aside a voluntary conveyance of his separate property made for the purpose and with the design of defeating her right to maintenance. (*Murray* v. *Murray, supra.*) A debtor has the right to prefer one creditor to another (sec. 3432, Civ. Code), and an absolute as distinguished from a colorable conveyance to him in

satisfaction of the indebtedness of sufficient size to render the consideration adequate is not fraudulent. (*Saunderson* v. *Broadwell*, 82 Cal. 132 [23 Pac. 36].) The deserted wife with her minor child was in a situation comparable to that of a creditor. While we are cited to no authority where the question has been considered in California, we are not without authority to support the conclusion to which we have come. The problem has been considered by the supreme court of Iowa. In the case of *McNally* v. *Emmetsburg Nat. Bank,* 197 Iowa, 602 [192 N. W. 925], that court, after reviewing the circumstances thoroughly, says: "We are not concerned in this action with any question of the rights of the respective parties to such a contract between themselves. The only question at this point is whether or not such a contract, when entered into with good faith between the parties and subsequently carried out by the institution of divorce proceedings and the pronouncement of a divorce and the transfer of the property as provided in the contract, will be upheld when fully executed as having been supported by a valuable consideration. It was not a 'voluntary payment' under these conditions. It is not void for want of a consideration which the law will recognize. In a sense it may properly be said that the wife was a creditor of her husband. She was entitled to all the rights of support that belonged to her under the marriage relation. Whether she had .forfeited such rights was a matter for the determination of the divorce court, and not for inquiry in a collateral proceeding. The husband recognized his obligation to her in making the contract and paying her the money as he did. This he had a legal right to do, and there was a sufficient legal consideration to support such contract. In other words, it was not a voluntary gift without consideration." To the same effect is *Parks* v. *Worthington,* 101 Tex. 505 [109 S. W. 909].

Respondent argues, however, that appellant was in any event entitled to recover only one-half of the community in her action for divorce. We have already pointed out that the court had the right to take suitable action to protect and secure to her a proper maintenance; in addition to which it may be observed the record indicates very clearly that appellant was not confined to an action for

desertion. When she and her husband came to terms over the furniture she indicated to him very clearly, as she did on another occasion which we have already noticed, that she did not intend the "other woman" should have any of her things. It is altogether impossible for us to find support in the evidence for the second part of the finding. In this particular it should be mentioned that there is no finding that there was in fact an intent to defraud.

We therefore turn to examine the remaining portion of the questioned finding. Is there evidence to support the finding that F. I. Peacock was insolvent at the time of the transfer. Appellant bases her contention in this regard upon two things: First, she says that the proof establishes that at the time of the transfers F. I. Peacock was possessed of $1890 realized from the insurance policies. Second, she claims that inasmuch as the writ of execution, which was returned wholly unsatisfied, was issued only to the sheriff of Solano County, whereas Alameda was the county of Peacock's residence at the time, the respondent failed to make out a *prima facie* case. However, some time prior to January 1, 1929, and probably before August 1, 1928, Peacock became indebted to the respondent in the sum of $1500, which is included in the judgment. In December, 1928, Peacock wrote to the manager of respondent that he was unable to pay his account and did not know when he would be able to pay. It seems from the letter that there was no dispute concerning the amount of the bill, but its nonpayment was due simply to his inability to discharge the debt. For a year after that he was sent monthly statements, but did not or could not pay. Some property owned by Peacock in Piedmont, Alameda County, had been disposed of prior to the transfers and the proceeds applied to other obligations. A writ of execution returned *nulla bona,* at least in the county of the judgment debtor's residence, makes out a *prima facie* showing of insolvency. We think it unnecessary to determine whether an execution so returned by the sheriff of a county from which the judgment debtor had lately moved his residence, is sufficient to make out such a case for the reason that there is some independent evidence contained in the letter of Peacock and the efforts of respondent to collect to sup-

port the conclusion that the judgment debtor was unable to pay his debts when they became due. It is said in *In re Ramazzina,* 110 Cal. 488 [42 Pac. 970] : "A debtor when he is unable to pay his debts from his own means, as they become due is insolvent." (*Washburn* v. *Huntington,* 78 Cal. 573 [21 Pac. 305] ; *Sacry* v. *Lobree,* 84 Cal. 41 [23 Pac. 1088].) To the same effect is *Southwick* v. *Moore,* 61 Cal. App. 585 [215 Pac. 704]. The portion of the finding, now under examination, cannot be said to be withou some support, but this cannot prevent a reversal of the cause.

Judgment reversed.

Shenk, J., Curtis, J., Preston, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.