[Civ. No. 16989.   Second Dist., Div. Three.   Jan. 19, 1950.]

THE PEOPLE, Appellant, v. E. W. BISCAILUZ, as County Sheriff, etc., Respondent.

Fred N. Howser, Attorney General, Chas. W. Johnson and Vincent P. Lafferty, Deputy Attorneys General, for Appellant.

Harold W. Kennedy, County Counsel, and Wm. E. Lamoreaux, Deputy County Counsel, for Respondent.

SHINN, P. J.—The State of California, as successor to the California Employment Stabilization Commission, instituted this proceeding in mandamus to compel the sheriff of the County of Los Angeles to pay over to it the sum of $275.84 which was in his possession pursuant to levy of an attachment upon the bank account of Joe C. Hidalgo, issued in Los Angeles Municipal Court action (No. 835383) entitled *Max Speilberg* v. *Joe C. Hidalgo.* The petition alleged that subsequent to January 1, 1947, Joe C. Hidalgo was ''an employer'' within the meaning of the Unemployment Insurance Act; he was delinquent in payments of contributions pursuant to the act for the year 1947 in the amount of $403.37; he was ''unable to pay his debts in the ordinary course of business'' as they became due and was insolvent; petitioner had notified the sheriff of its claim against Mr. Hidalgo and had demanded that the money in his hands pursuant to the above mentioned attachment be paid over to petitioner in partial satisfaction of the delinquent contributions, but the latter had refused to comply with the demand. It was also alleged that the petitioner had no plain, speedy, or adequate remedy in the ordinary course of law for the enforcement of its statutory right to have its claim satisfied first in the event of an employer's insolvency. (Unemployment Insurance Act [Stats., 1935, p. 1226; 3 Deering's Gen. Laws, Act 8780d], § 46(a).)

Respondent filed a general demurrer to the petition, and also an answer denying the material allegations of the petition. After a trial, the court made findings that Mr. Hidalgo was not insolvent and that petitioner was not without another sufficient remedy, but that in all other respects the allegations of the petition were true. As conclusions of law the court held that the complaint did not state a cause of action and that the Unemployment Insurance Act did not give petitioner a prior right to the funds in the hands of the sheriff. Plaintiff has appealed from the judgment discharging the alternative writ and denying a peremptory writ.

Although the record is not clear on the point, it appears to be conceded in the briefs of both parties that the claimed delinquency was solely in respect to payments of the employer's share of the required contributions.

Petitioner's claim to the money in the sheriff's custody is predicated upon section 46 of the act, which reads as fol-. lows: ''The wage-earner and employer contributions required to be paid by any employing unit under this act, together with interest and penalties, shall be satisfied first in any of the

following cases: (a) Whenever the employing unit is insolvent. (b) Whenever the employing unit make a voluntary assignment of his assets. (c) Whenever the estate of the employing unit in the hands of executors, administrators, or heirs is insufficient to pay all the debts due from the deceased. (d) Whenever the estate and effects of an absconding, concealed, or absent employing unit required to pay any amount under this act are levied upon by process of law. This section does not give the State a preference over any recorded lien which attached prior to the date when the amounts required to be paid become a lien. The preference given to the State by this section shall be subordinate to the preferences given to claims for personal services by Sections 1204 and 1206 of the Code of Civil Procedure."

Petitioner asserts that the facts bring the case squarely within the scope of subdivision (a) of section 46, and attacks the court's finding that Hidalgo was not insolvent as being wholly unsupported by the evidence. It is to be noted that the term insolvency is not defined either in section 46 or elsewhere in the act. Two distinct and well-defined meanings of the word have been generally recognized, depending upon the nature of the circumstances and the purposes for which it is used. It is necessary to determine which one is to be applied, for, as we shall see, Hidalgo was shown to be insolvent under one definition but not under the other. (See *Gaspar* v. *United Milk Prod. of Cal.*, 62 Cal.App.2d 546, 554-555 [144 P.2d 867]; *Ruggles* v. *Cannedy*, 127 Cal. 290, 302 [53 P. 911, 59 P. 827, 46 L.R.A. 371].) In some situations insolvency refers to an excess of liabilities over assets (see Bankruptcy Act of 1898, as amended [30 Stats. 544], 11 U.S.C.A., § 1(19), and *National Refining Co.* v. *Pennsylvania Petroleum Co.*, 66 F.2d 914, 918, bankruptcy; Civ. Code, § 3439.02; and *Miller* v. *Keegan*, 92 Cal.App.2d 846, 851 [207 P.2d 1073], fraudulent conveyances); whereas in others it refers to inability to meet one's obligations as they mature in the ordinary course of business (see *American Can Co.* v. *Erie Preserving Co.*, W.D.N. Y., 171 F. 540, 542, equity receivership; Civ. Code, §§ 1777, 1796(3), stoppage *in transitu*; Civ. Code, § 3450 and *Jeggle* v. *Mansur*, 17 F.2d 729, 732, statutory assignment for benefit of creditors; *Hoehn* v. *Crews*, 144 F.2d 665, 674, insolvency of national bank; *Artesian Water Co.* v. *Com. of Int. Rev.*, 125 F.2d 17, exemption of insolvent corporation from payment of excess profits tax). The latter meaning has been widely followed in the absence of controlling statutory definition (*Dixon Lumber*

*Co.* v. *Peacock,* 217 Cal. 415, 421 [19 P.2d 233]; *Alpha H. & S. Co.* v. *Ruby Mines Co.,* 97 Cal.App. 508, 515 [275 P. 984]; *Meighan* v. *Finn,* 2 Cir., 146 F.2d 594, 595, aff'd. 325 U.S. 300 [65 S.Ct. 1147, 89 L.Ed. 1624]), especially where applied to persons engaged in commercial pursuits (*Bell* v. *Ellis,* 33 Cal. 620, 625; *Parker* v. *First Nat. Bank.* 96 Okla. 70 [220 P. 39]; *Akin* v. *Hull,* 222 Mo.App. 1022 [9 S.W.2d 688, 690-691]; *Woodman* v. *Butterfield,* 116 Me. 241 [101 A. 25, 29].) According to appellant, the latter meaning was intended in section 46. Analysis of the statute discloses this contention to be sound.

The language of section 46 was evidently influenced considerably by the terms of the earlier federal priority statute (U. S. Rev. Stats., § 3466, 31 U.S.C.A. § 191) which reads: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, or to cases in which an act of bankruptcy is committed." It has uniformly been held that the final clause of section 3466 "defines or explains the meaning of insolvency referred to in the earlier part," and thus, in terms, "requires that there shall be an insolvent debtor 'not having sufficient property to pay all his debts.' " (*United States* v. *Oklahoma,* 261 U.S. 253, 259-260 [43 S.Ct. 295, 67 L.Ed. 638], and cases there cited.) Accordingly, the federal statute has been construed to require in each case a showing that the debtor has insufficient assets to pay all his debts, and also that he has made a voluntary assignment thereof or committed an act of bankruptcy, etc. (See note, 67 L.Ed. 638-642.) However, the constructions that have been given the federal act do not fit the state enactment. Section 46 differs from the federal act in language and in punctuation. The quoted language defining insolvency in the federal act is absent from section 46. We must look elsewhere for the correct definition. The status of insolvency clearly gives the state a preferential position without the concurrence of any other condition specified in the section. Again, if appellant is correct in asserting that section 46 incorporates, and thus should be construed con-

sistently with, the common law preference enjoyed by the sovereign (see cases cited *post*), the cases construing the federal statute would not aid respondent, since it is settled that the federal government enjoys no general common law rights and that its priority is wholly statutory in nature. (28 Am. Jur. § 68, p. 814.) Finally, the federal statute deals merely with debts generally, whereas section 46 treats of a particular obligation in the nature of a tax, and must accordingly be given a construction consistent with the policy of the taxing statute.

The statutory priority conferred upon the state by section 46 of the act, as will hereafter appear, is but one phase of a comprehensive plan designed to ensure prompt payment in full of all required contributions. The repeal of the previous section 46 in 1945, and concurrent enactment of section 46 in its present form, were manifestly intended to enlarge the availability of the statutory priority conferred by the original act. Whereas the former priority section applied in cases of "bankruptcy of any employer, or of liquidation of such employer under any law of this State by reason of insolvency or *inability to pay his debts*" (Stats. 1935, p. 1234, § 46, as amended, Stats. 1937, p. 2068; emphasis added) the revised section specifically extended the priority to nonstatutory general assignments, insolvent probate estates, and levies upon the assets of dishonest or absent employers irrespective of insolvency. It would be unreasonable to assume that, except where otherwise clearly expressed, the Legislature intended by use of the word "insolvent" to limit the general application of the state's priority right when, in the same enactment, it extended the priority to specific situations not previously reached. The phrase, "whenever the employing unit is insolvent," appears to have been used in a broad sense as a convenient and inclusive reference to financial distress of the same nature as was covered by the previous provisions, that is, insolvency either in the common law sense or in the bankruptcy sense. To accord this meaning to section 46(a) is to bring it into harmony with its companion sections: (44(b), which deals with the status of employee contributions in the hands of an employer in the event of his "insolvency or bankruptcy"; section 46.1, which imposes a duty upon "every assignee, receiver, trustee in bankruptcy, or other representative of an insolvent employing unit" to notify the commission of his assumption of office; and section 457, which by reference to section 46, grants a similar preference as to any moneys

received by an employer under a voluntary disability compensation plan in the event of "the bankruptcy or insolvency of the employer or the appointment of a receiver for the business of the employer." We conclude that proof of inability of an employer to meet his obligations as they fall due provides a sufficient basis in a proper case for invoking the priority conferred by section 46.

Although there was no evidence that Hidalgo's liabilities exceeded his assets, petitioner contends, and respondent has not seriously argued to the contrary, that all of the evidence tended to prove that Hidalgo was unable to pay his debts as they became due. The case for the respondent is argued from this premise and, as we have seen, it follows that Hidalgo was shown to be insolvent within the meaning of section 46(a).

We are thus brought to the question whether the state is entitled to assert its claim to the attached funds in preference to the attaching creditor. Appellant contends that section 46 is a statutory expression of the common-law prerogative right of the sovereign state to preference of its claims over those of general creditors of an insolvent. (See 28 Am. Jur. § 76, p. 823; anno., 51 A.L.R. 1356, 65 A.L.R. 1332, 90 A.L.R. 185, 167 A.L.R. 640.) We need not decide whether, or to what extent, the right may exist in California (*cf.*, *Estate of Morris*, 37 Cal.App.2d 155 [99 P.2d 294]; *Pauley* v. *State of California*, 75 F.2d 120, 133-134), for it appears to be settled that it does not amount to a lien or to a preference over specific liens created in favor of third parties before the state commences proceedings to enforce its claim. (*In re Gruner*, 295 N.Y. 510, 296 N.Y. 668 [68 N.E.2d 514, 69 N.E.2d 822, 167 A.L.R. 628, 639]; *Marshall* v. *New York*, 254 U.S. 380, 382-384 [41 S.Ct. 143, 65 L.Ed. 315]; *United States Fidelity & G. Co.* v. *Bramwell*, 108 Ore. 261 [217 P. 332, 32 A.L.R. 829], and cases there cited.) Levy of an attachment, of course, creates a specific lien. (*Aigeltinger* v. *Einstein*, 143 Cal. 609, 615 [77 P. 669, 101 Am.St.Rep. 131]; *McCaffey Canning Co., Inc.* v. *Bank of America*, 109 Cal.App. 415, 423 [294 P. 45].) Thus, in *Wise* v. *L. & C. Wise Co.*, 153 N.Y. 507 [47 N.E. 788], wherein the sovereign prerogative was asserted in respect to a tax claim which had not been reduced to a lien, it was squarely held that the claim would not be accorded any preference over the lien of an attaching creditor. Likewise, in *In re Atlas Iron Const. Co.*, 19 App.Div. 415 [46 N.Y.S. 467], the court held that the lien of an attachment prevailed over tax claims, saying, "The title to the property

became subordinated to that lien thus acquired, and it is quite clear that neither the state nor the city would have been entitled to take this property out of the hands of the sheriff after he had levied upon it under the attachment, to be applied to the payment of taxes against the corporation." (46 N.Y.S. at p. 470; see, also, *In re Henke's Estate*, 81 N.Y.S. 2d 79.) To the same effect are *Beaston* v. *Farmers' Bank*, 12 Pet. 102 [9 L.Ed. 1017]; *Prince* v. *Bartlett*, 8 Cranch. 431 [3 L.Ed. 614]; and *United States* v. *Canal Bank*, 3 Story 79, Fed.Cas. No. 14,715, applying the federal priority statute. In placing reliance upon *In re Lehrer-Howard, Inc.*, 44 N.Y.S. 2d 494, which applies the common law prerogative in respect to unemployment contributions, appellant overlooks the distinguishing fact that no prior liens were involved. This case, and others cited by appellant, are fully consistent with the controlling rule stated in the early case of *Commissioners of Public Accounts* v. *Greenwood*, 1 Desaus.(S.C.) Eq. 450 [20 S.C.Rep. 169] (1795), that "by the common law the king was entitled to a preference only . . . in cases where he and the subject stood in equal degree." It follows that any right of priority which the state may have in the present case must be derived from the statute alone.

█ It is conceded by appellant that section 46 does not create a lien in favor of the state, but merely a right to have its claim satisfied first. The nature of the right, and its relationship to Speilberg's prior attachment lien may best be determined by reference to the Unemployment Insurance Act as a whole. The act contains comprehensive provisions for enforcing payment of delinquent contributions:

Section 45.1 provides that contributions are "collectible by civil action," which action is given preference over all other civil litigation except equity cases, proceedings for extraordinary writs and summary proceedings; and in such an action the commission's certificate "showing the delinquency shall be prima facie evidence" of payment of wages by the employer, levy of contributions, compliance by the commission with all the provisions of the act, and the delinquency.

Section 45.8 provides that if an employer is delinquent the commission may give notice thereof "to all persons having in their possession or under their control any credits or other personal property belonging to such delinquent employing unit, or owing any debts to such employing unit . . ."; that any persons so notified shall make no disposition of such prop-

erty without the commission's consent or until 20 days shall have elapsed; and that they must within five days advise the commission of the extent of such property or debts in their possession or owing by them. It is provided also that the word "person" as used in section 45.8 includes the state, any county, municipality, district or other political subdivision thereof.

Section 45.9 establishes a procedure whereby the commission may obtain summary judgment against a delinquent employer, the recording of an abstract of which "shall constitute a lien upon all the property of the employer in such county, owned by him or which he may afterwards and before the lien expires acquire, which lien shall have the force, effect and priority of a judgment lien." Execution may issue upon such a judgment as in other civil proceedings.

Section 45.10 provides that the recording of the commission's certificate with the county recorder creates a lien in the amount of the delinquency upon all real property of the employer in the county owned by him or thereafter acquired, with the force, effect and priority of a judgment lien. This section further provides for the issuance by the commission of "a warrant for the enforcement of any liens and for the collection of any amount required to be paid to the State under this act," which has "the same effect as a writ of execution," and under which levy and sale upon the employer's property is had "in the same manner and with the same effect as a levy of and a sale pursuant to a writ of execution."

Section 46 is thus seen to be but one in a series of detailed provisions designed to implement the collection of contributions. The state is accorded certain simple and expeditious procedures for acquiring and enforcing a lien upon the property of a delinquent employer. As long as the employer is possessed of sufficient leviable assets to satisfy the delinquency, the prescribed remedies are adequate to protect the interests of the unemployment insurance program, even though the employer may be insolvent. The priority conferred by section 46(a) would appear to be intended to apply in cases of insolvency where the state would otherwise be required to share upon an equal footing with general creditors of the employer. Section 46 thus contemplates the pendency of appropriate proceedings in which, as against the conflicting claims of other creditors of the insolvent, that of the state may enjoy its statutory priority. Any other interpretation would be inconsistent with the clear implications of the language used.

In the first place, section 46(d) grants the state a priority where there has been a levy upon the property of an absconding, concealed, or absent employer even though he may be solvent. It appears to have been the legislative intention to give the state priority over an attachment or execution levied in such cases. Since this is the only provision relating to liens created by levies under process of law, the absence of a like provision applied to such levies under other circumstances calls for the application of the rule *inclusio unius exclusio alterius.* The several provisions which relate to the state's preference are inconsistent with the idea that the state in all cases is to be paid first. There is a simple procedure by which the state could have improved its position with respect to prospective liens from that of a preferred creditor to the status of a lien holder, and if the state had availed itself of this procedure its lien, of course, would have taken precedence over subsequent liens created by the debtor or by action of his creditors which would be valid as to general creditors. The state is here claiming the status of a holder of a first lien despite its failure to follow the statutory procedure, and its contention necessarily is that the mere existence of the tax liability gives it the same preference it would enjoy as a lien holder. Clearly this is not the purpose of the act. Upon the contrary, it seems clear that the methods by which the state may acquire a lien were provided for the reason that the state will enjoy no preference over valid liens created by the debtor or through action of his creditors before the state has reduced its claim to a lien. To hold in the present case that section 46(a) confers a right upon the state superior to Speilberg's attachment lien would be to treat the provisions by which the state may acquire a lien as meaningless and unnecessary.

We conclude that the sheriff was under no duty enjoined by law to turn over the property under attachment to the state. It therefore becomes unnecessary to inquire into the propriety of mandamus as a remedy.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1950. Traynor, J., voted for a hearing.