KENNETH K. BECHTEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STEPHEN D. BECHTEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75485, 75486. Promulgated July 24, 1936.

*Max Thelen, Esq., Robert L. Bridges, Esq.*, and *Paul S. Marrin, Esq.*, for the petitioners.

*C. P. Reilly, Esq.*, for the respondent.

826

OPINION.

LEECH: In determining the deficiency here in question respondent has determined that the stock of the W. A. Bechtel Co. had a fair market value on December 26, 1931, of $175 per share and that the transfer of stock to the two petitioners by their father at a purported consideration of $100 per share was, in effect, a sale of four-sevenths of the transferred stock for an aggregate consideration of $39,000, and was a gift of the remaining three-sevenths of such stock. Accordingly, he treated the three-sevenths determined by him to

have been a gift, as separate property of the petitioner in each case, and three-sevenths of the total dividend paid in each instance to be taxable to the respective petitioner. The remaining four-sevenths he treated as community property. Respondent now asks an increase of the deficiency in each case on the theory that the entire 390 shares of stock acquired by each petitioner were the separate property of the latter and all of the dividends received on such stock were taxable to them individually.

The California Civil Code provides:

SEC. 163. All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, * * * is his separate property.

SEC. 164. All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property; * * *

SEC. 687. Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either.

. The rule is clear under the California decisions, that property acquired by residents of California during coverture is presumed to be community property and that before such property can be treated as separate property this presumption must be overcome by evidence that it was acquired with funds constituting the separate property of the husband or wife, was acquired upon the credit of the separate property of one or the other, alone, as distinguished from the credit of the community, or was acquired by gift. *Dunn* v. *Mullan*, 211 Cal. 583; 296 Pac. 604; *Fountain* v. *Maxim*, 210 Cal. 48; 290 Pac. 576; *Moulton* v. *Moulton*, 182 Cal. 185; 187 Pac. 421. The Board has recognized this rule. As we said in *Alanson Weeks*, 31 B. T. A. 627:

So, that, whether or not the property in question was separate or community, i. e., whether or not the *Ellis* case, cited by the respondent, or the *Schuyler* case, relied upon by the petitioner, should be followed, depends upon whether or not that presumption that the borrowed funds with which the stock was purchased were community funds, has been successfully overcome. We are of the opinion that it has not.

Here the disputed stock was acquired by each of these petitioners during their marriage and residence in California. Thus the presumption arises in each case that such stock is community property. It has been so considered by the petitioners and their wives. The issue here submitted in each case is determined by the answer to the inquiry as to whether the evidence is sufficient to rebut the legal presumption.

Respondent argues that, because the sale price of the stock was less than its fair market value, the excess above that value constituted a gift; and that, since the sole security for the payment of both notes for $39,000 was the stock acquired, it must follow that the credit given in the transaction for the portion of stock actually sold, was on the security of the three-sevenths of the stock acquired by gift as the separate property of the individual petitioners. He contends that those facts and circumstances rebut the presumption under California law that the stock on which the disputed dividends were paid was acquired as part of the community estate, and that the case is controlled by *In Re Ellis' Estate*, 203 Cal. 414; 264 Pac. 743.

This position is premised upon a gift to petitioners of three-sevenths of the stock they here respectively acquired. In our opinion, the fact of a gift is contradicted by the record here.

A standard definition of gift is: "A voluntary transfer of property by one to another, without any consideration or compensation therefor." *Blair* v. *Rosseter*, 33 Fed. (2d) 286; *C. B. Wilcox*, 27 B. T. A. 580.

Intent to make a gift is a *sine qua non* of a gift. *Blanche S. Ross*, 28 B. T. A. 39; affd., 67 Fed. (2d) 989; *Arthur H. Lougee*, 26 B. T. A. 23; affd., 63 Fed. (2d) 112. The presence of consideration here contradicts an intention to make a gift (*Noel* v. *Parrott*, 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754), particularly since the law imposed no gift tax and no benefit, to the transferor, was apparently obtainable by artificially clothing a gift as a sale.

Here the facts disclose that both the transferor of the disputed stock and its recipients, the petitioners, intended the transaction to be a sale and not a gift. Consideration passed. It is true that the fair market value of the transferred stock was in excess of the price specified in the contract. But, nevertheless, it was a transfer for a very valuable monetary consideration. And, there was additional consideration in the form of past and future services to the company in which the father was deeply interested financially, as well as for personal reasons. *Arthur L. Lougee, supra; Bass* v. *Hawley*, 62 Fed. (2d) 721.

Although we are of the opinion that the transfers by W. A. Bechtel of all of this stock to the petitioners, his sons, were sales and not gifts, assuming that three-sevenths of the stock transferred was a gift, as respondent contends, then it would seem that the intent of the donor was to make a gift of that stock to the respective communities, from which it would properly follow that such stock was so given and received.

Nor is the designation in each contract of December 26, 1932, of the pledgor as the "sole owner" of the stock, and the dividends

thereon as his "absolute property", controlling here. In construing a written agreement, we are not restrained by the parol evidence rule which operates only between the parties thereto. *Peugh* v. *Davis*, 96 U. S. 332. This Board is entitled, in the circumstances, to know the conditions and circumstances surrounding the parties at the time the contract was made, so as to put us, as nearly as possible, in the position of those parties. *Commissioner* v. *Darnell, Inc.*, 60 Fed. (2d) 82. When this is done here, the importance of those references is nullified. In each case the agreement was drawn by the attorney, to effect a certain result. That was the guarantee of payment of each note and the protection of each petitioner in the matter of stock rights as against the holder of the note. The attorney considered that, under the conditions of these transfers, each petitioner received the stock as community property, and communicated this opinion to petitioners and their father.

The respondent argues that the failure of the respective wives of the petitioners to execute the agreement of March 19, 1932, containing the mutual options, and the execution of a certificate evidencing their understanding of the agreement and releasing their claims to the proceeds of the insurance policies therein provided to be taken out by their husbands, except to the extent entitled thereto as beneficiaries of their husbands' estates, contradict the theory that petitioners acquired this stock as community property. We do not agree. The explanation of these circumstances by the attorney who drew the original contracts of December 26, 1931, as well as the option agreements, three months later, is reasonable and convincing. The consent of the wives of the petitioners to the option agreement was evidenced because of the understanding that the stock was community property, and to preclude the raising of any question as to the right of the wives to any part of the proceeds of the insurance policies to be taken out by their husbands. Without such releases, the wives of the petitioners might have claimed a part of those proceeds on the ground that the premiums thereon had been paid from dividends received on the stock or from other community income. See *New York Life Insurance Co.* v. *Bank of Italy*, 60 Cal. App. 602; 241 Pac. 61; *Union Mutual Life Insurance Co.* v. *Broderick*, 196 Cal. 497; 238 Pac. 1034; *Dixon Lumber Co.* v. *Peacock*, 217 Cal. 415; 19 Pac. (2d) 233. We conclude that the record evidence does not rebut the legal presumption here effective that the 390 shares of stock acquired by each of these petitioners was community property, and taxable as such.

*Decision will be entered under Rule 50.*